PEOPLE v DOYLE

Docket No. 98809. Argued October 10, 1995 (Calendar No. 3). Decided
April 2, 1996.

Michael R. Doyle was charged in the Oakland Circuit Court with oper-
ating a vehicle while under the influence of intoxicating liquor,
third or subsequent offense; driving a vehicle with a suspended or
revoked license, second or subsequent offense; and of being an
habitual offender, second offense. Thereafter, the Supreme Court
decided *People v Bewersdorf*, 438 Mich 55 (1991), holding that a
person who has been convicted of OUIL-3d and is subsequently
again convicted of OUIL-3d can be charged as an habitual offender.
Two months later, before pleading guilty of OUIL-3d and of driving
with a suspended license, the defendant moved to dismiss the
habitual offender information. The court, Hilda Gage, J., granted
the defendant's motion, concluding that application of *Bewersdorf*
to conduct occurring before the release of the opinion would vio-
late the Ex Post Facto Clauses of the Michigan and United States
Constitutions. The Court of Appeals, MARILYN KELLY, P.J., and D. C.
KOLENDA, J. (REILLY, J., dissenting), affirmed, holding that due pro-
cess bars retroactive application of judicial decisions that have the
effect of enhancing the possible penalty for a criminal conviction,
and stated that it is unrealistic to say *Bewersdorf* did not change
the law (Docket No. 148686). The people appeal.

In an opinion by Justice MALLETT, joined by Chief Justice
BRICKLEY, and Justices CAVANAGH, BOYLE, RILEY, and WEAVER, the
Supreme Court *held*:

*People v Bewersdorf* applies retroactively to this case. Where a
precisely drafted statute, unambiguous on its face, is interpreted by
the Supreme Court for the first time, there has not been a change
in the law. Where the Legislature has passed an unambiguous stat-
ute, that statute is the law.

1. Retroactive application of a judicial decision will violate due
process only when it acts as an ex post facto law, i.e., one that
makes an action done before the passing of the law, that was inno-
cent when done, criminal and punishes such action, or one that
aggravates a crime or makes it greater than it was when commit-
ted. An unforeseeable judicial enlargement of a criminal statute,

applied retroactively, operates precisely like an ex post facto law. The retroactive application of an unforeseeable interpretation of a criminal statute, if detrimental to a defendant, generally violates the Due Process Clause. Further, a judicial decision that increases the authorized penalty for a crime also is a violation of the ex post facto prohibition. Contrary to the Court of Appeals decision, retroactive application of *Bewersdorf* to the defendant does not implicate any due process or ex post facto concerns.

2. *Bewersdorf* was not an unforeseeable decision that had the effect of changing the law, nor did it establish a new rule of law. Rather, it clarified the relationship between OUIL felony offenses and the habitual offender act and held that an OUIL-3d conviction, which is a felony under the Motor Vehicle Code, can support charging a defendant as an habitual offender when it is a second or subsequent OUIL-3d conviction. The habitual offender statute affects only the maximum term of a sentence by allowing the trial judge, in the exercise of discretion, to increase the maximum sentence by one and one-half times. It was not intended to make a separate substantive crime out of being an habitual criminal, but rather, for deterrent purposes, to augment the punishment for second or subsequent felonies.

3. Generally, judicial decisions are to be given complete retroactive effect. If a judicial decision is unexpected and indefensible in light of the law existing at the time of the conduct, retroactive application is problematic. A flexible approach is utilized where statutory construction is concerned, and retroactivity is limited where justice so requires. In this case, the defendant's assertion of reliance on published Court of Appeals decisions at the time of his offense was absurd because the decision in *Bewersdorf*, then pending on appeal, was not unexpected, unforeseeable, or indefensible in light of all pertinent considerations.

4. There is a distinction between a decision by the Supreme Court that overrules precedent established by the Supreme Court, and a decision by the Supreme Court that overrules a decision of a lower court. To determine whether retroactivity is proper, the latter does not invoke the same kinds of due process considerations as are central to a determination of the former. It is recognized that a published decision of the Court of Appeals is controlling precedent for trial courts. In this case, however, it is without question that at the time of the defendant's offense the statutory language of the habitual offender act was unambiguous and clear. Therefore, the act, by its plain language, applied to the defendant's second OUIL-3d conviction. *Bewersdorf* gave effect to valid law that existed before the defendant's offense.

Justice LEVIN, concurring, stated that the habitual offender act is not a precisely drafted statute, unambiguous on its face.

Although *Bewersdorf* was not correctly decided, in this case, no adequate reason was proffered why it should not be applied retroactively to the charges of which the defendant was convicted on his plea of guilty over six weeks after it was decided.

Reversed and remanded.

203 Mich App 294; 512 NW2d 59 (1994) reversed.

*Frank J. Kelley*, Attorney General, *Thomas L. Casey*, Solicitor General, *Richard Thompson*, Prosecuting Attorney, *Joyce F. Todd*, Chief, Appellate Division, and *Richard H. Browne*, Assistant Prosecuting Attorney, for the people.

*Robert S. Zawideh* for the defendant.

Amicus Curiae:

*Donald Martin*, President, *John D. O'Hair*, Prosecuting Attorney, and *Timothy A. Baughman*, Chief, Research, Training and Appeals, for the Prosecuting Attorneys Association of Michigan.

MALLETT, J. We granted leave in this case to determine whether this Court's decision in *People v Bewersdorf*,[1] is retroactively applicable to conduct that took place before the release of that opinion. We hold that *People v Bewersdorf* applies retroactively to the present defendant, Mr. Michael Robert Doyle. We reverse the judgment of the Court of Appeals and remand this case to the circuit court for further proceedings with regard to the supplemental information.

---

[1] 438 Mich 55; 475 NW2d 231 (1991), cert den sub nom *Johnson v Michigan*, 502 US 1111 (1992), reh den 503 US 999 (1992).

I

## A. HISTORY OF *PEOPLE v BEWERSDORF*

In *Bewersdorf*, this Court, for the first time, interpreted the relationship between the habitual offender act and the Motor Vehicle Code. We held that the habitual offender act[2] is applicable to third and subsequent convictions for operating a motor vehicle while under the influence of intoxicating liquor (OUIL),[3] and therefore, reversed the Court of Appeals. This Court concluded that the Motor Vehicle Code and the habitual offender act were not conflicting; rather, they "dovetail[ed] harmoniously." 438 Mich 55, 59; 475 NW2d 231 (1991). Accordingly, on the basis of a literal interpretation of the plain language of the statutes, a defendant who is convicted of OUIL-3d is guilty of a felony. Thus, if a defendant is subsequently convicted of another OUIL-3d offense, he can be charged as an habitual offender.

However, this result was not always so clear. Before this Court's decision in *Bewersdorf*, the Court of Appeals decided *People v Tucker*, 177 Mich App 174; 441 NW2d 59 (1989), in which it held that a person who had two or more OUIL-3d convictions could not be charged as an habitual offender. A different panel of the Court of Appeals chose to follow the *Tucker* holding in *People v Bewersdorf*, 181 Mich App 430; 450 NW2d 271 (1989). This Court overruled both decisions.[4]

---

[2] MCL 769.10 *et seq.*; MSA 28.1082 *et seq.*

[3] MCL 257.625(6); MSA 9.2325(6), as amended by 1987 PA 109, MCL 257.902; MSA 9.2602. The current provision is MCL 257.625(6)(d); MSA 9.2325(6)(d), as amended by 1993 PA 359.

[4] A brief chronology is helpful to an understanding of the issues in this case. In May of 1989, the Court of Appeals decided *People v Tucker*. This

## B. HISTORY OF *PEOPLE v DOYLE*

During the pendency of the *Bewersdorf* appeal to this Court (between January 8 and August 22, 1991), the present defendant chose once again to drive while drunk. Defendant's conduct took place on June 26, 1991, in Oakland County, two months before the release of the *Bewersdorf* opinion. Defendant was charged with operating a vehicle while under the influence of intoxicating liquor, third or subsequent offense (OUIL-3d), MCL 257.625(6);   MSA 9.2325(6),[5] driving a vehicle while his license was suspended or revoked, second or subsequent offense (DWLS-2d), MCL 257.904(3);   MSA 9.2604(3),  and being an habitual offender, second offense, MCL 769.10;   MSA 28.1082.[6]

Approximately two months after the release of *Bewersdorf*, on October 8, 1991, before pleading guilty to the OUIL-3d and DWLS-2d charges, Mr. Doyle moved to dismiss the habitual offender information. The court granted Mr. Doyle's motion, concluding that application of *Bewersdorf* to conduct occurring before the release of the opinion would violate the Ex Post Facto Clauses of the United States[7] and Michi-

---

Court denied leave to appeal in that case on September 20, 1989. 433 Mich 873. In December of 1989, a different panel of the Court of Appeals decided *People v Bewersdorf*, following the rationale of the *Tucker* decision. The prosecutor sought leave to appeal to this Court and leave was granted on July 18, 1990. 435 Mich 867. This Court's opinion in *Bewersdorf* was subsequently released on August 22, 1991.

[5] According to the sentencing transcript, Mr. Doyle had also been convicted of drunk driving on October 22, 1982, and on June 16, 1988. Thus, for purposes of *this* OUIL-3d charge, the June 26, 1991, incident was the third time that Mr. Doyle engaged in this behavior.

[6] It appears from the record that Mr. Doyle was previously convicted of OUIL-3d for conduct occurring on January 30, 1989, May 22, 1989, and January 29, 1990. Accordingly, Mr. Doyle's June 26, 1991, arrest for OUIL was his sixth.

[7] US Const, art I, § 10, cl 1; art I, § 9, cl 3.

gan Constitutions.[8] Thus, Mr. Doyle pleaded guilty of OUIL-3d and DWLS-2d. On November 19, 1991, he was sentenced to two to five years for the OUIL-3d conviction, a $500 fine was imposed, his license was revoked for five years, and he was given credit for forty-six days in jail. Additionally, he was sentenced to one year for the DWLS-2d conviction.[9]

At the plea proceedings, the prosecution placed the defendant on notice that it intended to appeal the dismissal of the habitual offender charge. Subsequently, the ruling was affirmed by the Court of Appeals. 203 Mich App 294, 296; 512 NW2d 59 (1994). The Court of Appeals held that "the due process provisions of the United States Constitution and the Michigan Constitution bar the retroactive application of judicial decisions that have the effect of enhancing the possible penalty for a criminal conviction." The Court found that application of *Bewersdorf* to Mr. Doyle's conduct would effectively increase the authorized penalty for a crime after the fact, in violation of ex post facto principles. Further, the Court found that retroactive application of *Bewersdorf* in that case did not obligate it to apply *Bewersdorf* retroactively in this case. Finally, in response to the prosecution's argument that due process considerations are not implicated because there has been no change in the law, the

---

[8] Const 1963, art 1, § 10.

[9] At the time of Mr. Doyle's plea in this case (91-110153), he also pleaded guilty in another case (91-109688) to the same charges of OUIL-3d and DWLS-2d. Further, he pleaded guilty of unlawful use of a license plate. On November 19, 1991, in case number 91-109688, the same sentence and fine were imposed, including an extra ninety days to be served concurrently with the other two sentences for the unlawful use of a license plate. The sentences imposed in this case, 91-110153, were to be served concurrently with those imposed in case number 91-109688.

Court stated, "it is unrealistic to say that *Bewersdorf* did not change the law." 203 Mich App 297.

The dissent was based on the fact that when Mr. Doyle was arrested and charged on June 26, 1991, Administrative Order No. 1990-6[10] was not in effect. Thus, at the time the defendant was arrested, "he could expect that should his case reach the Court of Appeals, the panel that would consider his case might disagree with the *Tucker/Bewersdorf* ruling, and he would be bound by any contrary ruling . . . ." 203 Mich App 299.

II

Mr. Doyle has argued that this Court created "new law" in *Bewersdorf*, which, if applied retroactively to his conduct, will violate the constitution, specifically the ex post facto prohibitions found in both the Michigan and United States Constitutions. The Court of Appeals agreed with Mr. Doyle and affirmed the trial court's dismissal of the habitual offender information. We disagree.

It is well recognized that the Ex Post Facto Clause does not apply directly to the judiciary. *Marks v United States*, 430 US 188; 97 S Ct 990; 51 L Ed 2d

---

[10] Administrative Order No. 1990-6, as modified by Administrative Order No. 1994-4 provides in pertinent part:

> A panel of the Court of Appeals must follow the rule of law established by a prior published decision of the Court of Appeals issued on or after November 1, 1990. The prior published decision remains controlling authority unless reversed or modified by the Supreme Court or a special panel of the Court of Appeals as provided in this order. A panel which follows a prior published decision only because it is required to do so shall so indicate in the text of its opinion, citing this administrative order and providing a statement of wherein and why it disagrees with the prior published opinion.

260 (1977). However, ex post facto principles are applicable to the judiciary by analogy through the Due Process Clauses of the Fifth and Fourteenth Amendments. *Bouie v City of Columbia*, 378 US 347; 84 S Ct 1697; 12 L Ed 2d 894 (1964). This Court has acknowledged the application of the ex post facto analogy to the judiciary first in *People v Dempster*, 396 Mich 700, 714-718; 242 NW2d 381 (1976), and later in *People v Stevenson*, 416 Mich 383, 395; 331 NW2d 143 (1982).

Therefore, retroactive application of a judicial decision will only violate due process when it acts as an ex post facto law. An ex post facto law has been defined by the United States Supreme Court as one " 'that makes an action done before the passing of the law, and which was *innocent* when done, criminal; and punishes such action,' or 'that *aggravates a crime*, or makes it *greater* than it was, when committed.' " *Bouie, supra* at 353 (emphasis in original). As a result of the due process analogy, it has been stated that "an unforeseeable *judicial enlargement* of a criminal statute, applied retroactively, operates precisely like an *ex post facto law* . . . ." *Id.* at 353 (emphasis added). "The retroactive application of an *unforeseeable* interpretation of a criminal statute, if detrimental to a defendant, generally violates the Due Process Clause." *Hagan v Caspari*, 50 F3d 542, 545 (CA 8, 1995) (emphasis added).

Further, this Court has recognized that a judicial decision that increases the authorized penalty for a crime is also a violation of the ex post facto prohibition. *Stevenson, supra* at 397. In *Stevenson*, this Court stated that "[p]roviding fair notice that conduct is criminal is one of the central values of the *Ex Post*

*Facto* Clause . . . [b]ut fair notice is not the sole pur-
pose of the clause." *Id.* at 396. Generally, the basic
principles protected by the Due Process Clause guar-
antees preclude retroactive application of a "judicial
construction of a criminal statute [that] is 'unex-
pected and indefensible by reference to the law
which had been expressed prior to the conduct in
issue . . . .' " *Bouie, supra* at 354, quoting Hall, Gen-
eral Principles of Criminal Law (2d ed), p 61.

In the present case, the Court of Appeals holding is
based, in part, on *Stevenson*:

> [T]he due process provisions of the United States Consti-
> tution and the Michigan Constitution bar the retroactive
> application of judicial decisions that have the effect of
> enhancing the possible penalty for a criminal convic-
> tion. . . . Among other things, a court cannot by judicial
> construction increase the authorized penalty for a crime
> after the fact. . . . Because that is precisely what the appli-
> cation of *Bewersdorf* to this case would do, that case can-
> not be applied to this one. [*Doyle, supra* at 296.]

We reject this holding by the Court of Appeals. Con-
trary to the Court of Appeals decision, this Court
finds that retroactive application of *Bewersdorf* to Mr.
Doyle does not implicate any due process[11] or ex post
facto concerns. Our decision is based on our belief
that *Bewersdorf* was not an unforeseeable decision
that had the effect of "changing" the law. Therefore,
*Bewersdorf* did not establish a "new" rule of law in
Michigan jurisprudence.

In *Bewersdorf*, this Court discussed at length and
clarified the relationship between OUIL felony offenses

---

[11] See discussion, *infra*, part III.

and the habitual offender act. The Court held that an
OUIL-3d conviction, which is a felony pursuant to MCL
257.902; MSA 9.2602 of the Motor Vehicle Code, can
support charging the defendant as an habitual
offender when it is a second or subsequent OUIL-3d
conviction. The habitual offender statute affects only
the maximum term of the defendant's sentence by
allowing the judge, in his discretion, to increase the
maximum sentence by one and one-half times. Thus,
the Court noted that the Legislature has provided the
courts with discretion whether to impose such
enhanced punishment.[12] Further, the Court repeated
that in enacting the habitual offender act, " 'the legis-
lature did not intend to make a separate substantive
crime out of being an habitual criminal but rather, for
deterrent purposes, intended to augment the punish-
ment for second or subsequent felonies.' " 438 Mich
67, quoting *People v Shotwell*, 352 Mich 42, 46; 88
NW2d 313 (1958). This Court noted that the constitu-
tionality of the habitual offender act has been consist-
ently upheld.

Guided by the rules of statutory construction, the
Court next focused on the legislative intent underly-
ing the habitual offender statute and stated:

In the habitual offender act, the Legislature has directed
that when an individual commits a *"subsequent felony*
within this state, the person *shall* be punished" in accor-
dance with the act's provisions. The language is *clear* and

---

[12] If this Court was inclined to address defendant's deprivation of due
process argument, we would be hard pressed to say that the habitual
offender act increases the punishment for a crime. The enhancement in
sentencing is discretionary, not mandatory, and the minimum term is left
undisturbed. Defendant's argument, which gained the support of the Court
of Appeals, that the possibility of enhancement is the equivalent of an
increase in punishment, is less than certain.

*unambiguous*; it makes *no exceptions* with respect to OUIL felony convictions. *People v Shotwell, supra* at 46 (emphasis added).

In the Court of Appeals, the *Bewersdorf* majority, relying on *People v Tucker, supra,* ruled that the habitual offender act may not be used to enhance defendant's sentence for OUIL-3. Although the panel in *Tucker* conceded that an application of the plain meaning of the habitual offender act would mean that "enhancement is clearly available . . . since the habitual offender statute clearly applies to all felonies," 177 Mich App 179, it nevertheless chose to analyze the OUIL statute and habitual offender act so as to place them in conflict. [438 Mich 68-69.]

Accordingly, this Court held that *Tucker* was wrongly decided and that the two acts are not conflicting.

We reject the *Tucker* panel's *forced* construction that placed the two statutes in conflict. We prefer a course which, in the words of the dissenting *Bewersdorf* Court of Appeals judge, enables the two acts to "dovetail harmoniously."

[T]he Legislature intended that the sentence for an OUIL-3 felony, if it is a first felony conviction, shall be as provided in the Motor Vehicle Code: imprisonment for not less than one or more than five years . . . . However, any subsequent OUIL felony conviction is subject to the repeat offender provisions of the habitual offender act regardless of whether the underlying felony conviction is also an OUIL-3 offense. [438 Mich 69-70.]

Therefore, *Bewersdorf* was based on a clear reading of unambiguous statutory provisions, both of which were in effect long before defendant's June 26, 1991, drunk driving offense. In *Bewersdorf*, this Court addressed a question of statutory interpretation that had never been previously decided at this level. We

determined that the proper answer lay in the clear language of the statute, as enacted by the Legislature. In light of that language, it cannot be maintained that our *Bewersdorf* decision was "unforeseeable." We did not change the law. We gave effect to an unambiguous statute, implementing the intent of the Legislature. Thus, the law was as we interpreted it to be, because of the nature of the unambiguous statutory language.

III

"[T]he general rule is that judicial decisions are to be given complete retroactive effect. . . . [C]omplete prospective application has generally been limited to decisions which overrule clear and uncontradicted case law." *Hyde v Univ of Michigan Bd of Regents,* 426 Mich 223, 240; 393 NW2d 847 (1986). If a judicial decision is "unexpected" and "indefensible" in light of the law existing at the time of the conduct, retroactive application of such a decision is problematic. *Tebo v Havlik,* 418 Mich 350; 343 NW2d 181 (1984), illustrates such a situation. In remaining consistent with our decision in *Tebo,* we find that there are special circumstances that, if present here, would require that *Bewersdorf* be given only prospective application. However, we find that *Tebo* may be distinguished from the case presented by Mr. Doyle.

In *Tebo,* this Court was presented with the question whether its decision in *Putney v Haskins,* 414 Mich 181; 324 NW2d 729 (1982), interpreting the "name and retain" provision of the dramshop act, was to be given retroactive effect. The statutory[13] "name and

---

[13] Currently MCL 436.22(6); MSA 18.993(6).

retain" provision states that a dramshop action can be maintained only if "the alleged intoxicated person is a named defendant in the action and is retained in the action until the litigation is concluded by trial or settlement." The purpose of the provision is to avoid collusive litigation in which, following a settlement, the plaintiff and the allegedly intoxicated defendant are both aligned against the tavern (the "dramshop" defendant). *Putney, supra* at 186-188.

Similar to the procedural development of the present case, an earlier decision by the Court of Appeals spoke directly to the "name and retain" issue. In *Buxton v Alexander*, 69 Mich App 507; 245 NW2d 111 (1976), the Court held that a dramshop action could go forward following an agreement under which the allegedly intoxicated driver remained a named defendant, but the plaintiff would indemnify the driver and her insurer. This Court denied leave to appeal. 399 Mich 827 (1977).

Five years later, this Court granted leave in *Putney* and rejected the approach taken in *Buxton*, holding instead that the "name and retain" provision is violated by any settlement between the plaintiff and the allegedly intoxicated defendant. This Court concluded in *Putney* at 190, "We are obligated to enforce the statute as written."

If broadly applied, the rule of *Putney* would have required dismissal of many dramshop suits in which attorneys had followed the course that appeared proper in light of *Buxton*. Careful professional judgments had been made in reliance on the Court of Appeals decision in *Buxton*. Therefore, in *Tebo* this Court granted leave to appeal the issue of the retroactivity of *Putney*, and ordered that no dismissals take

place until the question was decided. 417 Mich 887 (1983); Administrative Order No. 1983-1, 417 Mich cxviii.

In its several *Tebo* opinions, this Court explained why the special circumstances described above required prospective application of the rule of *Putney*, notwithstanding the fact that the ruling was grounded in the plain language of the statute.[14] This Court said, "[a]lthough it has often been stated that the general rule is one of complete retroactivity, this Court has adopted a *flexible* approach." 418 Mich 360 (emphasis added). Further, the Court stated, "where statutory construction has been involved, this Court has limited the retroactivity of a decision where justice so required." *Id.* at 361. This Court found that justice required limiting the retroactivity of its *Putney* decision.

> In light of the unquestioned status of *Buxton* at the time *Putney* was decided by this Court, it would be unjust to apply *Putney* retroactively to persons other than those before the Court in that case.
>
> In contrast to the harsh effect which the full retroactivity of *Putney* would have on injured plaintiffs, prospective application will have little effect on dramshop defendants in those pending cases where settlement agreements have been made, even though the defense of *Putney* will be unavailable. [418 Mich 363-364.]

Accordingly, this Court found these circumstances problematic for retroactivity purposes.

---

[14] The Court rescinded Administrative Order No. 1983-1 shortly after issuing the *Tebo* opinion. Administrative Order No. 1984-3, 417 Mich cxviii, 418 Mich lxxxiv.

Obviously, the procedural development of the "name and retain" issue is similar to the development in the present case.[15] However, there is a substantial difference between *Tebo* and this case. In *Tebo,* lawyers and parties had made significant decisions in direct reliance on *Buxton* for a period of five years. This Court notes the significance of the institutional pressures encouraging settlement. Given this pressure, the Court stated that reliance on *Buxton* could "hardly be deemed unreasonable." See 418 Mich 363, n 3.

Defendant argues that pursuant to MCR 7.215(C)(2), this Court "specifically" put him on notice that *Tucker* was the law on which he could rely. We believe that it cannot be seriously maintained that drunk drivers, such as Mr. Doyle, were relying on the rule of *Tucker* in conducting their behavior. No person would decide to drive drunk for a third time because, pursuant to *Tucker,* such conduct would be a felony that could result in a five-year prison sentence,[16] but not a prison sentence of seven and a half years.[17] We therefore find defendant's reliance argument to be absurd.

---

[15]

| *Tebo:* | *Doyle:* |
|---|---|
| 1. statutory enactment | 1. statutory enactment |
| 2. *Buxton,* 69 Mich App 507 | 2. *Tucker,* 177 Mich App 174 |
| 3. Lv den 399 Mich 827 | 3. Lv den 433 Mich 873 |
| 4. *Putney,* 414 Mich 181 | 4. *Bewersdorf,* 438 Mich 55 |
| 5. *Tebo,* 418 Mich 350 | 5. *Doyle* |

[16] MCL 257.625(6); MSA 9.2325(6), as amended by 1987 PA 109, MCL 257.902; MSA 9.2602. The current provision is MCL 257.625(6)(d); MSA 9.2325(6)(d), as amended by 1993 PA 359.

[17] MCL 769.10; MSA 28.1082.

We are also unpersuaded that our *Bewersdorf* decision was unforeseeable. Obviously, the Court of Appeals *Tucker* interpretation was clearly erroneous in light of the plain language of the statute. As noted by the dissent, *Tucker* was not even binding on the Court of Appeals at the time *Bewersdorf* reached that level. See Administrative Order No. 1990-6.[18] If Mr. Doyle chose to apprise himself of the state of the "law" of which he was probably familiar, this having been his sixth OUIL conviction, he would have found that *Tucker* was resting on shaky ground, given that oral argument had already been heard in *Bewersdorf* at the time of his offense. Accordingly, we are not persuaded that our decision in *Bewersdorf* was "unexpected," "unforeseeable" or "indefensible" in light of all pertinent considerations. Furthermore, we do not disturb the viability of our holding in *Tebo v Havlik*, because we find that case to be completely distinguishable from the case before us.

IV

In this case, the Court of Appeals was unpersuaded by the prosecution's position, which this Court now adopts, that *Bewersdorf* did not "change" the law. The Court states, "[b]ecause '[a] new decision that explicitly overrules an earlier holding obviously "breaks new ground" or "imposes a new obligation," ' it is unrealistic to say that *Bewersdorf* did not change the law." 203 Mich App 297, quoting *Butler v McKellar*, 494 US 407, 412; 110 S Ct 1212; 108 L Ed 2d 347 (1990). Additionally, the Court stated that its *Tucker* decision was "the law" on the date of defendant's

---

[18] N 10 *supra.*

offense and that retroactive application of *Bewersdorf* "would [therefore] undermine the rule of law in this state." 203 Mich App 298.

This approach taken by the Court of Appeals overlooks the hierarchical nature of the court system, as well as the special rule of the Legislature when it provides a clear statutory enactment. In the view of the Court of Appeals majority, the "rule of law" in this state is more offended by the retroactive application of a controlling decision by this Court, than it is by a continued application of an erroneous and overruled decision by the Court of Appeals. As stated in part II, we find that *Bewersdorf* was not an unforeseeable decision that had the effect of changing the law.

The Court of Appeals reliance on *Butler* for the proposition that it is "unrealistic" to say that *Bewersdorf* did not change the law was misplaced. In *Butler*, the United States Supreme Court was faced with the question whether its decision in *Arizona v Roberson*, 486 US 675; 108 S Ct 2093; 100 L Ed 2d 704 (1988), announced a "new rule" of law that was not dictated by the precedent established by another United States Supreme Court decision, *Edwards v Arizona*, 451 US 477; 101 S Ct 1880; 68 L Ed 2d 378 (1981).[19] Accord-

---

[19] *Butler* involved a habeas corpus petition in which the defendant collaterally attacked his capital murder conviction and death sentence. On the same day that the defendant's habeas corpus petition was denied, the United States Supreme Court announced its decision in *Roberson* barring police-initiated interrogation following a suspect's request for counsel in a separate investigation. Previously, in *Edwards* the Court held that during continuous custody, the police were required to refrain from all further questioning once the accused invoked his right to counsel on any offense.

Pursuant to *Teague v Lane*, 489 US 288; 109 S Ct 1060; 103 L Ed 2d 334 (1989), the question faced by the Court was whether to apply its new decision, which was not dictated by precedent existing at the time that defendant's conviction became final, to defendant's case on collateral review.

ingly, *Butler* addresses the situation in which the highest Court in this country renders its decision in such a way that it changes, modifies or overrules another of *its own* cases that is established precedent at the time of the new ruling. *Butler* involves a change in *judge-made* law. This is not what happened in *Bewersdorf.*

Moreover, the Court of Appeals mistakenly relied on this Court's decision in *People v Stevenson.* That case abrogated the common-law "year and a day" rule in homicide cases. This Court held that the abrogation could not be applied to Mr. Stevenson because to do so would violate due process. However, like *Butler, Stevenson* is also distinguishable on the basis that it altered a longstanding judge-made common-law rule.

Certainly there is a distinction between a decision made by this Court that overrules precedent established by this Court and a decision made by this Court that overrules a lower court decision. For purposes of determining whether retroactivity is proper, the latter situation does not invoke the same kinds of

---

Generally, the Court holds that "new rules will not be applied or announced in cases on collateral review unless they fall into one of two exceptions." *Penry v Lynaugh,* 492 US 302, 313; 109 S Ct 2934; 106 L Ed 2d 256 (1989). "Under the first exception, 'a new rule should be applied retroactively if it places "certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe." ' " *Butler, supra* at 415, quoting *Teague, supra* at 307. "Under the second exception, a new rule may be applied on collateral review 'if it requires the observance of those procedures that . . . are "implicit in the concept of ordered liberty." ' " *Butler, supra* at 416, quoting *Teague, supra* at 311.

In *Butler,* the Court held that although *Roberson* announced a "new rule," it did not fall within either of the two exceptions. Thus, the defendant was not entitled to the benefit of retroactive application of the *Roberson* ruling.

due process considerations that are central to a determination in the former.

We do recognize that a published decision of the Court of Appeals is controlling precedent for trial courts. MCR 7.215(C)(2).[20] Defendant argues that *Bouie* requires that the criminal law applied to him have existed when the conduct in issue occurred. He argues that because *Tucker* was precedent for the trial courts, it was the "law" at the time he committed the prohibited conduct. However, it is without question that at the time of defendant's offense the statutory language of the habitual offender act was unambiguous and clear. Therefore, the habitual offender act, by its plain language, applied to defendant's second OUIL-3d conviction.

> "A judicial inquiry investigates, declares and enforces liabilities as they stand on present or past facts and under laws supposed already to exist. That is its purpose and end. Legislation, on the other hand, looks to the future and changes existing conditions by making a new rule to be applied thereafter to all or some part of those subject to its power." [*Ross v Oregon*, 227 US 150, 163; 33 S Ct 220; 57 L Ed 458 (1913).]

In *Bewersdorf*, this Court fulfilled its judicial role and gave effect to valid laws that existed before June 26, 1991. Unfortunately, *Tucker*'s previous erroneous interpretation of the statute served to thwart the legislative intent and the mandated result.

---

[20] MCR 7.215(C)(2) provides:

A published opinion of the Court of Appeals has precedential effect under the rule of stare decisis. The filing of an application for leave to appeal to the Supreme Court or a Supreme Court order granting leave to appeal does not diminish the precedential effect of a published opinion of the Court of Appeals.

V

Lastly, we find no merit in defendant's argument that retroactive application of *Bewersdorf* will perpetuate the same "evil" that existed in *People v Moon*, 125 Mich App 773; 337 NW2d 293 (1983). *Moon* involved a situation in which the defendant received, as a condition of probation, a jail term twice as long as had been permissible under the statutory language in effect on the date of the offense. The Court of Appeals found that this increase in punishment was a violation of the Ex Post Facto Clause. However, *Moon* involved a postconduct *legislative* amendment, not a judicial interpretation of an unambiguous statute. Thus, it is not applicable to the present case.

We find that *People v Dempster, supra*, is also inapposite to the present case. *Dempster* was a securities case in which this Court concluded that it would violate due process if Ms. Dempster and her corporate codefendant were convicted under a criminal statute that applied to them only as the result of the judicial gloss supplied in this Court's *Dempster* opinion. This Court stated:

> This Court is not able, within the bounds of due process, to "interpret" a criminal statute which contains an *ambiguous* exemption such that it results in conviction of the defendant charged in the specific case. That is not the "fair warning" demanded by the Constitution. [396 Mich 715 (emphasis added).]

Thus, *Dempster* involved this Court's interpretation of an ambiguous substantive criminal statute, not the interpretation of a precise unambiguous sentence-enhancement statute.

VI

Accordingly, we hold that, as in this case, where a precisely drafted statute, unambiguous on its face, is interpreted by this Court for the first time, there has not been a "change" in the law. Where the Legislature has passed an unambiguous statute, that statute is the law. Our role is to enforce the law as written. Our holding today is grounded in the belief that it is perfectly clear that anyone reading the habitual offender act and the Motor Vehicle Code easily could have concluded that the *Tucker* decision was contrary to their plain meanings. See *Hagan v Caspari, supra* at 547.

The decision of the Court of Appeals is reversed. This matter is remanded to the trial court for further proceedings consistent with this opinion.

BRICKLEY, C.J., and CAVANAGH, BOYLE, RILEY, and WEAVER, JJ., concurred with MALLETT, J.

LEVIN, J. (*concurring*). For the reasons stated in dissent in *People v Bewersdorf*, 438 Mich 55, 78; 475 NW2d 231 (1991), I am unable to join in the majority's characterization of the statute as "a precisely drafted statute, unambiguous on its face . . . ."[1]

The majority also states:

> Our holding today is grounded in the belief that it is *perfectly clear that anyone* reading the habitual offender act and the Motor Vehicle Code easily could have concluded that the *Tucker*[2] decision was contrary to their plain meanings. [*Ante*, p 113 (emphasis added).]

---

[1] *Ante*, p 113.

[2] *People v Tucker*, 177 Mich App 174; 441 NW2d 59 (1989).

This Court denied leave to appeal in *People v Tucker*, 433 Mich 873 (1989). The only "anyone" on this Court to whom it may have been "perfectly clear" "that the *Tucker* decision was contrary to" the plain meanings of the habitual offender act and the Motor Vehicle Code was Chief Justice BRICKLEY, who alone was shown as "would grant leave to appeal."

I join in reversing the Court of Appeals because this Court granted leave to appeal in *Bewersdorf*[3] on July 18, 1990, almost a year before defendant Michael Robert Doyle once again drove while he was drunk. *Bewersdorf* was decided on August 22, 1991, over six weeks before Doyle chose to plead guilty to the drunk driving charges, and moved to dismiss the habitual offender information. The prosecution notified Doyle in the course of the plea proceedings that it intended to appeal a dismissal of the habitual offender charge.

Although I believe, for the reasons stated in dissent in *Bewersdorf*, that it was not correctly decided, I agree with the majority, for essentially the reasons stated in the majority opinion, that no adequate reason has been proffered why *Bewersdorf* should not be applied retroactively to the charges of which Doyle was convicted on his plea of guilty over six weeks after *Bewersdorf* was decided.

---

[3] 435 Mich 867. The Court of Appeals in *People v Bewersdorf*, 181 Mich App 430; 450 NW2d 271 (1989), followed *Tucker*, one judge dissenting. There were, thus, five Court of Appeals judges who were of the opinion that it was not perfectly clear that *Tucker* was contrary to the plain meaning of the statutes.