PEOPLE v YOUNG (ON REMAND)

Docket No. 200195. Submitted January 7, 1997, at Lansing. Decided April 1, 1997, at 9:15 A.M. Leave to appeal sought.

Bryce W. Young was convicted following a bench trial in the Recorder's Court for the City of Detroit, Wendy M. Baxter, J., of second-degree murder and possession of a firearm during the commission of a felony. He was sentenced to twelve to thirty years' and two years' imprisonment for the respective convictions. He appealed, and the Court of Appeals, O'CONNELL, P.J., and N. O. HOLOWKA, J. (WAHLS, J., dissenting), affirmed the convictions. 212 Mich App 630 (1995). The Supreme Court, in lieu of granting leave to appeal, remanded the matter to the Court of Appeals for reconsideration in light of *People v Bender*, 452 Mich 594 (1996), and for a determination whether the *Bender* decision should be applied retroactively to this case.

On remand, the Court of Appeals *held*:

1. This case is indistinguishable from *Bender*. *Bender* requires that the defendant's convictions be reversed if *Bender* is applicable to this case.

2. A police officer who has been told that retained counsel is at the police station attempting to meet the defendant may not subsequently initiate an interrogation of the defendant without informing the defendant of such counsel.

3. The distinction relied on by the majority in this court's prior opinion in this action that distinguished this case from *Bender*, i.e., the defendant in this case had waived his *Miranda* rights before any attempted contact by an attorney retained on his behalf, is a distinction without a difference.

4. The decision in *Bender* is to be given complete retroactive effect. The *Bender* decision was not unexpected or indefensible in light of the Supreme court's prior decision in *People v Wright*, 441 Mich 140 (1992), and did not overrule clear and uncontradicted case law.

5. The error in admitting the statements given by the defendant to the police was not harmless.

Reversed and remanded for a new trial.

O'Connell, P.J., dissenting in part, stated that retroactive applica-
tion of *Bender* is not mandated by the decision in *Wright* because
there was no majority decision in *Wright*. The defendant's convic-
tions should be affirmed.

1. Constitutional Law — Right to Remain Silent — Waiver.

   A police officer who has been told that counsel retained to represent
   a defendant is at the police station attempting to meet the defend-
   ant may not subsequently initiate an interrogation of the defendant
   without informing the defendant of such counsel.

2. Constitutional Law — Retroactive Application of Judicial Decisions.

   Judicial decisions generally are to be given retroactive effect; com-
   plete prospective application generally has been limited to deci-
   sions that overrule clear and uncontradicted case law; if a judicial
   decision is unexpected and indefensible in light of the law existing
   at the time of the conduct, retroactive application of such a deci-
   sion is problematic.

3. Constitutional Law — Retroactive Application of Judicial Decisions.

   The rule established in *People v Bender*, 452 Mich 594 (1996), that law
   enforcement investigators may not conceal from a suspect the fact
   that counsel has been made available and is at the suspect's dispo-
   sal has retroactive application.

*Frank J. Kelley*, Attorney General, *Thomas L.
Casey*, Solicitor General, *John D. O'Hair*, Prosecuting
Attorney, *Timothy A. Baughman*, Chief of Research,
Training, and Appeals, and *Jeffrey Caminsky*, Assis-
tant Prosecuting Attorney, for the people.

State Appellate Defender (by *F. Michael Schuck*),
for the defendant on appeal.

ON REMAND

Before: O'Connell, P.J., and MacKenzie and Wahls,
JJ.

Wahls, J. Defendant appeals as of right his bench
trial convictions of second-degree murder, MCL
750.317; MSA 28.549, and possession of a firearm dur-
ing the commission of a felony, MCL 750.227b; MSA

28.424(2). The trial court sentenced defendant to terms of twelve to thirty years' and two years' imprisonment for the respective convictions. We reverse.

Initially, this Court affirmed defendant's convictions in a divided panel. *People v Young*, 212 Mich App 630; 538 NW2d 456 (1995). However, the Michigan Supreme Court, in lieu of granting leave to appeal, remanded to this Court "for reconsideration in light of *People v Bender*, 452 Mich 594 [551 NW2d 71] (1996), and for a determination whether that decision should be applied retroactively to this case." 453 Mich 973 (1996).

The facts of this case are set out in full in our initial opinion. 212 Mich App 631-635. Briefly, defendant was arrested on the evening of September 9, 1991, and placed in a holding cell for the night. On the morning of September 10, Sergeant Lee Caudill questioned defendant for approximately one hour. Defendant denied all involvement in the killing of the decedent. Later, defendant was taken to the police crime laboratory for the administration of a polygraph examination. During the examination, Sergeant Caudill received a telephone call indicating that defendant's family had retained an attorney who was at the police station requesting an opportunity to meet his client. Sergeant Caudill did not notify defendant of this fact. Following the polygraph examination, Sergeant Caudill questioned defendant and elicited several admissions damaging to defendant's case.

On appeal, defendant argues that the trial court abused its discretion in admitting these statements because the police failed to inform defendant that his

family had retained counsel and that counsel had attempted to contact him. We agree.

This case is on all fours with *Bender, supra.* In *Bender,* a parent of each of the two defendants retained an attorney to represent their respective sons after their sons were arrested. *Id.* at 598, 600. As instructed by the attorney retained to represent defendant Ziegler, Ziegler's mother went to the police station, asked to see her son, and stated that she had a message for Ziegler from his attorney. *Id.* at 598. In the case of defendant Bender, it was the attorney herself who contacted the police station and asked to speak with Bender. *Id.* at 600. In both situations, the police refused to inform the defendants that an attorney was trying to contact them. *Id.* at 599-600. Meanwhile, both defendants were interrogated after signing *Miranda*[1]-warnings forms. 452 Mich 600-601. The trial court refused to admit the statements made during these interrogations. *Id.* at 601-602. This Court affirmed. 208 Mich App 221; 527 NW2d 66 (1994). On appeal to the Supreme Court, a majority of the Supreme Court established a prophylactic rule that stated that law enforcement investigators may not conceal from suspects the fact that counsel has been made available to them and is at their disposal. 452 Mich 620-621.

This case is indistinguishable from *Bender.* In all the cases (this case and both situations presented in *Bender*), counsel was retained for each of the defendants by the defendant's family. In all the cases, either counsel contacted the police station or the family contacted the police on the instructions of counsel. In

---

[1] *Miranda v Arizona,* 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

all the cases, following the refusal of the police to inform the defendants of the attempted contact, the police initiated an interrogation that resulted in incriminating statements. Accordingly, if *Bender* is applicable to this case, then it requires that we reverse defendant's conviction. 452 Mich 620, 623.

In this Court's initial opinion in this case, the majority opinion stated that the facts of *Bender* were distinguishable from this case because here defendant waived his *Miranda* rights before any attempted contact by an attorney retained on his behalf. 212 Mich App 641. This is a distinction without a difference. In *Bender, supra*, 452 Mich 622, Chief Justice BRICKLEY's majority opinion reasoned:

> [W]e invite much mischief if we afford police officers "engaged in the often competitive enterprise of ferreting out crime" the discretion to decide when a suspect can and cannot see an attorney who has been retained for a suspect's benefit. [Citation omitted.]

In this case, it was Sergeant Caudill who received a telephone call indicating defendant's family had retained an attorney who was at the police station requesting an opportunity to meet defendant. 212 Mich App 633. It was Sergeant Caudill who did not notify defendant of this fact while the polygraph examination was being conducted. *Id.* at 633-634. Following the conclusion of the polygraph examination, it was Sergeant Caudill who initiated a new interrogation of defendant and elicited the admissions now in question. *Id.* at 634.

This case does not require us to decide whether a police officer must, upon being contacted by counsel retained for a defendant, actively seek out the loca-

tion of a defendant's detention or interrupt an ongoing interrogation. Rather, this case simply asks whether the same police officer who has been told that retained counsel is at the police station attempting to meet a defendant may subsequently initiate an interrogation of that defendant without informing him that he has counsel. *Bender* answers this question in the negative. 452 Mich 621.

There remains the question whether *Bender* should be applied retroactively. Generally, judicial decisions are to be given complete retroactive effect. *People v Doyle*, 451 Mich 93, 104; 545 NW2d 627 (1996). Complete prospective application generally has been limited to decisions that overrule clear and uncontradicted case law. *Id.* If a judicial decision is "unexpected" and "indefensible" in light of the law existing at the time of the conduct, retroactive application of such a decision is problematic. *Id.*

Here, the Supreme Court's decision in *Bender* was not unexpected. The Supreme Court addressed this same issue in *People v Wright*, 441 Mich 140; 490 NW2d 351 (1992). In that case, Justices MALLETT and LEVIN and Chief Justice CAVANAGH supported the prophylactic rule announced in *Bender*. Although he chose to write separately, Justice BRICKLEY saw the police concealment as a critical factor in determining the voluntariness of the defendant's statements. Accordingly, Justice BRICKLEY cast the deciding fourth vote to reverse that defendant's conviction. *Id.* In light of *Wright*, it can hardly be said that *Bender* overruled clear and uncontradicted case law. Neither can it be said that *Bender* was "unexpected" or "indefensible" in light of *Wright*. Therefore, *Bender* is to be given complete retroactive effect. *Doyle, supra*

at 104; see also *Chow v O'Keefe*, 217 Mich App 102, 104-105; 550 NW2d 833 (1996).

The final question is whether the trial court's error can be considered harmless. The trial court's error implicates both the right against self-incrimination and the right to counsel. Const 1963, art 1, §§ 17, 20; *Bender*, 452 Mich 620. A constitutional error that occurs during the presentation of the case to the jury is assessed in the context of other evidence presented in order to determine whether its admission was harmless beyond a reasonable doubt. *People v Anderson (After Remand)*, 446 Mich 392, 405-406; 521 NW2d 538 (1994). This requires the beneficiary of the error to prove, and the court to determine, beyond a reasonable doubt that there is no reasonable possibility that the evidence complained of might have contributed to the conviction. *Id.* at 406. Here, in light of the sketchy visual identifications of the perpetrator, and the fact that witnesses to the crime initially thought someone other than defendant had committed the crime, the admission of this evidence was not harmless beyond a reasonable doubt. See *id.* at 407. Accordingly, defendant's convictions must be reversed and the matter must be remanded for a new trial.

Reversed and remanded.

MacKenzie, J., concurred.

O'Connell, P.J. *(concurring in part and dissenting in part)*. I agree with the majority that the Supreme Court's recent decision in *People v Bender*, 452 Mich 594; 551 NW2d 71 (1996), would require suppression of the present defendant's inculpatory statements were *Bender* to be applied retrospectively. However,

pursuant to *Johnson v New Jersey*, 384 US 719, 729-734; 86 S Ct 1772; 16 L Ed 2d 882 (1966), I do not believe that *Bender* should be afforded retrospective application. Accordingly, I would affirm.

Initially, I would note that *Bender* is a very unusual decision. The issues in *Bender* were framed in terms of a defendant's constitutional right to counsel (Const 1963, art 1, § 20) and right against compelled self-incrimination (Const 1963, art 1, § 17). However, the issues were resolved on a strictly extraconstitutional basis. The majority opinion in *Bender*[1] concedes as much, stating:

> This case rather clearly implicates both the right to counsel (Const 1963, art 1, § 20) and the right against self-incrimination (Const 1963, art 1, § 17). I conclude that *rather than interpreting these provisions, it would be more appropriate to approach the law enforcement practices that are at the core of this case* . . . . [*Bender, supra* p 620 (emphasis added).]

The opinion then proceeds to speak without great specificity of "constitutional civil liberties," *id.*, p 621, "closely guarded legal traditions," *id.*, p 623, and our "accusatorial" as opposed to "inquisitional" system of criminal justice. *Id.* The dissent characterized this approach as being "grounded solely on policy concerns, not constitutional mandates." *Id.*, p 644.

The "policy concern" lying at the heart of the *Bender* decision may be found in the following sentence of the majority opinion: "[W]e invite much mischief if we afford police officers 'engaged in the often competitive enterprise of ferreting out crime' the dis-

---

[1] The majority opinion in *Bender* is the concurring opinion written by Chief Justice BRICKLEY, not the lead opinion written by Justice CAVANAGH.

cretion to decide when a suspect can and cannot see an attorney who has been retained for a suspect's benefit." *Id.*, p 622 (citation omitted). This may be true, but, to paraphrase the dissent in *Bender*, one's personal desire to avoid "much mischief," no matter how sincere and heartfelt, does not translate that belief into a constitutional right. However, regardless of any shortcomings in the *Bender* decision, it is now the law in Michigan. *Boyd v W G Wade Shows*, 443 Mich 515, 523; 505 NW2d 544 (1993).

However, it is only *now* the law in Michigan. As discussed by the majority in the present case, our Supreme Court, in *Bender*, adopted a new prophylactic rule of law arguably foreshadowed by the Court's previous, fractured decision in *People v Wright*, 441 Mich 140; 490 NW2d 351 (1992). This history is remarkably similar to that of the United States Supreme Court's decision in *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966),[2] a decision that reified a new principle of law first adumbrated several years before *Miranda* in *Escobedo v Illinois*, 378 US 478; 84 S Ct 1758; 12 L Ed 2d 977 (1964).

The United States Supreme Court declined to afford *Miranda* retrospective application despite its prior decision in *Escobedo*. *Johnson, supra*, pp 729-734. The Court limited its application of the *Miranda* decision, though a clear majority of the Court previously had embraced the reasoning of *Escobedo*. In contrast, there was no majority decision in *Wright*. Thus, where the United States Supreme Court refused

---

[2] In fact, the *Bender* decision itself calls attention to its parallels with *Miranda. Bender, supra*, p 621.

to enforce *Miranda* retrospectively even where that decision had been foreshadowed by a clear majority of the Court in *Escobedo*, surely retrospective application of *Bender* is unwarranted where our Supreme Court could not muster a majority decision in *Wright*, the decision alleged by the majority in the present case to mandate retrospective application of *Bender*.

Therefore, I would decline to enforce *Bender* retrospectively and would affirm.