*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

THOMAS TYRONE CARTER,

        Defendant-Appellant.

UNPUBLISHED
March 11, 2025
2:13 PM

No. 368193
Wayne Circuit Court
LC No. 10-013036-01-FC

Before: MURRAY, P.J., and K. F. KELLY and D. H. SAWYER*, JJ.

PER CURIAM.

Defendant appeals his amended judgment of sentence following his jury trial convictions of kidnapping, MCL 750.349, first-degree criminal sexual conduct (CSC-I), MCL 750.520b(1)(c), and second-degree criminal sexual conduct (CSC-II), MCL 750.520c(1)(c). The trial court had initially sentenced defendant on July 13, 2011, as a third-offense habitual offender, MCL 769.11, to serve terms of imprisonment of 25 to 50 years for the kidnapping conviction, 25 to 50 years for the CSC-I conviction, and 10 to 15 years for the CSC-II conviction. On May 4, 2023, the trial court amended the judgment of sentence to include lifetime electronic monitoring (LEM). Following a resentencing hearing, the trial court, on March 15, 2024, issued a second amended judgment of sentence, which continued the original sentence plus LEM. Defendant appeals by right, and we affirm.

## I. FACTS

Defendant's convictions are the result of his 2008 kidnapping and sexual assault of a 16-year-old female whom he, at age 19, forced into an abandoned house while she was walking to school. An examination of the victim discovered a sample of DNA that was later matched to defendant. The victim also identified defendant as her attacker in a lineup.

On appeal, appellate counsel argues that the trial court was without the authority to amend defendant's judgment of sentence to include LEM, and that the addition of LEM to his sentence violated his constitutional right not to be subject to ex post facto laws. Defendant, *in propria*

_____

*Former Court of Appeals judge, sitting on the Court of Appeals by assignment.

*persona*, argues that his trial attorney provided ineffective assistance by failing to properly inform him of his possible sentence during plea negotiations, and that the trial court errantly calculated the total score for his offense variables under the sentencing guidelines.

## II. AMENDED SENTENCE

Appellate counsel argues as follows: "Per MCR 6.429(A) any correction of an invalid sentence on the court's own initiative must occur within 6 months of the entry of the judgment of conviction and sentence. Therefore, the court lacked authority to amend [defendant's] judgment in 2024 to add lifetime electronic monitoring." This Court reviews the interpretation and application of a court rule de novo as a question of law. *People v Martinez*, 307 Mich App 641, 647; 861 NW2d 905 (2014).

Defendant's conviction of CSC-I required the trial court to include LEM as a part of his sentence, under MCL 750.520n. See MCL 750.520b(2)(d). MCL 750.520n(1) provides as follows:

> A person convicted under section 520b or 520c for criminal sexual conduct committed by an individual 17 years old or older against an individual less than 13 years of age shall be sentenced to lifetime electronic monitoring as provided under section 85 of the corrections code of 1953, 1953 PA 232, MCL 791.285.

Our Supreme Court has recognized that the Legislature intended to "mandate lifetime electronic monitoring for all CSC-I sentences in which the defendant has not been sentenced to life without parole." *People v Comer*, 500 Mich 278, 290; 901 NW2d 553 (2017).[1]

As noted, the trial court did not sentence defendant to LEM in 2011 after his convictions, but then the Department of Corrections pointed out the oversight in January 2022. In May 2022, acting without counsel, defendant filed a motion *requesting* that the trial court resentence him, or amend the judgment of sentence, to include LEM. Nearly a year later, in May 2023, the trial court did exactly that—it amended the judgment of sentence to include LEM. In November 2023, defendant's attorney filed a motion requesting "a resentencing hearing in order to correct the sentence in accordance with the applicable court rule." The trial court held a hearing, after which it entered another amended judgment of sentence retaining the same periods of incarceration and the addition of LEM.

---

[1] The Court clarified that MCL 750.520n(1)'s limitation to convictions involving victims under 13 applied to only convictions under MCL 750.520c (CSC-II). *Comer*, 500 Mich at 291-292.

Because the trial court was required to impose LEM, and the original judgment of sentence did not include that mandatory facet, defendant's original sentence was invalid. *Comer*, 500 Mich at 292. MCR 6.429(A)[2] provides as follows:

> The court may correct an invalid sentence, on its own initiative after giving the parties an opportunity to be heard, or on motion by either party. But the court may not modify a valid sentence after it has been imposed except as provided by law. Any correction of an invalid sentence on the court's own initiative must occur within 6 months of the entry of the judgment of conviction and sentence.

Appellate counsel correctly points out that, under this subrule, the original sentence, invalid for want of LEM, could properly be amended sua sponte only until January 13, 2012. However, when the trial court amended the judgment of sentence on May 4, 2023, defendant had pending his request to amend his sentence to include LEM. Although the record does not indicate whether the trial court acted in response to defendant's *in propria persona* motion, in response to the Department of Correction's notification, or sua sponte, we presume it was acting on a pending motion that raised that very issue.

Regardless, after defendant moved the trial court to add LEM to his sentence, and after defendant's attorney's motion for resentencing, the trial court held a hearing before issuing its final May 2024 amended judgment of sentence, which again included LEM. Because MCR 6.429(A) provides that the trial court may correct an invalid sentence on a motion from either party, and in that circumstance the rule imposes no timing limitations, defendant's March 15, 2024 amended judgment of sentence, including LEM, was valid.

## III. EX POST FACTO LAW

Defendant also argues that the addition of LEM to his sentence for a 2011 conviction violated ex post facto protections because the applicability of LEM to CSC-I convictions involving a victim over 13 years old was not settled until the Supreme Court's 2017 decision in *Comer*, which should not have been applied retroactively to his sentence. We review unpreserved constitutional arguments for plain error affecting substantial rights. *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999).

The Michigan and United States Constitutions prohibit ex post facto laws. US Const, art I, § 10; Const 1963, art 1, § 10. "Both ex post facto clauses are designed to secure substantial personal rights against arbitrary and oppressive legislation and to ensure fair notice that conduct is criminal." *People v Callon*, 256 Mich App 312, 317; 662 NW2d 501 (2003) (citations omitted). A law is ex post facto if it " '(1) punishes an act that was innocent when the act was committed;

---

[2] As amended, effective September 1, 2021. The version of MCR 6.429(A) in effect when defendant was originally sentenced, but before the sentence was amended, provided as follows: "A motion to correct an invalid sentence may be filed by either party. The court may correct an invalid sentence, but the court may not modify a valid sentence after it has been imposed except as provided by law."

(2) makes an act a more serious criminal offense; (3) increases the punishment for a [committed] crime; or (4) allows the prosecution to convict on less evidence.' " *People v Betts*, 507 Mich 527, 542; 968 NW2d 497 (2021), quoting *People v Earl*, 495 Mich 33, 37; 845 NW2d 721 (2014) (alteration in original). "The critical question for an *ex post facto* violation is whether the law changes the legal consequences of acts completed before its effective date." *Carmell v Texas*, 529 US 513, 520; 120 S Ct 1620; 146 L Ed 2d 577 (2000) (quotation marks, citation, and alteration omitted).

The Ex Post Facto Clause normally concerns the application of statutes, not judicial decisions; however, "ex post facto principles are applicable to the judiciary by analogy through the Due Process Clauses of the Fifth and Fourteenth Amendments." *People v Doyle*, 451 Mich 93, 99-100; 545 NW2d 627 (1996). "[R]etroactive application of a judicial decision will only violate due process when it acts as an ex post facto law." *Id*. at 100. Due-process concerns limit judicial interpretations of a statute to prospective application when retroactive application would be " 'unexpected and indefensible by reference to the law which had been expressed prior to the conduct in issue.' " *Id*. at 101, quoting *Bouie v City of Columbia*, 378 US 347, 354; 84 S Ct 1697; 12 L Ed 2d 894 (1964) (quotation marks and citation omitted).

Defendant has not persuasively argued that *Comer* should not be applied retroactively. Defendant does not address whether *Comer's* interpretation of the CSC-I statute was unexpected or indefensible as applied to his sentence. Defendant simply asserts that *Comer* was a new rule of law, but that argument overlooks basic statutory history. The LEM provisions under MCL 750.520b(2)(d) and MCL 750.520n became effective on August 28, 2006, well before defendant's 2011 sentence. See 2006 PA 169; 2006 PA 171. Although panels of this Court were split (in unpublished opinions) on whether LEM was mandatory for those convicted of CSC-I against a victim older than 13 years, in 2012, this Court, in *People v Brantley*, 296 Mich App 546, 559; 823 NW2d 290 (2012), abrogated in part on other grounds by *Comer*, 500 Mich at 289-291, concluded that the statute required LEM for any defendant convicted of CSC-I, "regardless of the age of the defendant or the age of the victim." The Supreme Court's holding in *Comer* comports with this Court's holding in *Brantley* that the age of the victim is not a factor in whether LEM is required.

Because the statutes that mandated LEM for CSC-I convictions such as defendant's were in effect at the time of defendant's original sentencing, and there was no precedent stating that LEM was inapplicable to CSC-I sentences involving a victim older than 13 years, and because defendant does not argue otherwise, we conclude that *Comer* neither announced a new rule of law, nor was unexpected or indefensible as applied to defendant. Therefore, the application of *Comer* did not violate defendant's right to due process of law.

## IV. INEFFECTIVE ASSISTANCE

Defendant argues that his trial counsel provided ineffective assistance by failing to advise him in plea negotiations that his sentence would include LEM, and failing to properly advise him of the upper limit of the sentencing guidelines recommendation for his minimum sentence.

The constitutional question whether an attorney provided ineffective assistance is reviewed de novo. *People v Unger*, 278 Mich App 210, 242; 749 NW2d 272 (2008). A criminal defendant's right to counsel is guaranteed by the United States and Michigan Constitutions. US Const, Am

VI; Const 1963, art 1, § 20. This "right to counsel encompasses the right to the effective assistance of counsel." *People v Cline*, 276 Mich App 634, 637; 741 NW2d 563 (2007) (quotation marks omitted). In order to prevail, a defendant must show that "counsel's performance was deficient" and that "counsel's deficient performance prejudiced the defense." *People v Taylor*, 275 Mich App 177, 186; 737 NW2d 790 (2007) (quotation marks and citation omitted). Counsel's performance is deficient if "it fell below an objective standard of professional reasonableness." *People v Jordan*, 275 Mich App 659, 667; 739 NW2d 706 (2007). The performance will be deemed to have prejudiced the defense if it is reasonably probable that, but for counsel's error, "the result of the proceeding would have been different." *Id*. A defendant's right to the effective assistance of counsel includes the plea-bargaining process. *People v Douglas*, 496 Mich 557, 591-592; 852 NW2d 587 (2014), citing *Lafler v Cooper*, 566 US 156, 162; 132 S Ct 1376; 182 L Ed 2d 398 (2012). "Defense counsel must explain to the defendant the range and consequences of available choices in sufficient detail to enable the defendant to make an intelligent and informed choice." *People v Jackson*, 203 Mich App 607, 614; 513 NW2d 206 (1994).

Defendant argues that his trial counsel provided ineffective assistance by failing to inform him that he was subject to LEM regardless of whether he was convicted after trial or by plea, and that his upper guidelines range could be higher than 202 months. Defendant and his attorney addressed the possibility of a plea several times during pretrial proceedings. At a January 7, 2011 pretrial conference, the prosecuting attorney and trial court discussed the status of plea negotiations, with the prosecuting attorney stating that the offer was for "no reduce plea [sic] on count three along with the habitual we will dismiss counts 4 and 5," with a sentence at the high end of the guidelines range of "108 to 270 months." Defense counsel responded that "this is the first time I've heard it," and the prosecuting attorney confirmed for the trial court that defendant was subject to enhanced sentencing as a third-offense habitual offender. At a March 10, 2011 pretrial conference, the prosecuting attorney stated that there had been no plea offer because the crime was "pretty egregious," and that, if defendant was convicted, the prosecution would seek "top of the guidelines and a consecutive sentencing." After a sidebar, the prosecuting attorney remarked that the trial court had evaluated the case as calling for a sentence at the lower end of the guidelines range, and defense counsel was granted time to consider the offer.

At a March 14, 2011 pretrial conference, defense counsel informed the trial court that defendant had declined the offer, and that defendant had requested a change in counsel. Defendant explained that he wished to have different counsel because defendant believed he was innocent and wanted an attorney who would fight to exonerate him. At a March 16, 2011 conference, successor defense counsel was appointed. At a March 30, 2011 pretrial conference, the prosecuting attorney and trial court discussed that there was a "no reduce plea offer" with sentencing at the bottom of the guidelines range of 10½ to 30 years (126 months to 360 months), and successor defense counsel responded that defendant wished to go to trial.

With his Standard 4 brief, defendant submitted an affidavit stating that he rejected a plea offer because successor trial counsel opined that the prosecution could not prove coercion, and that the highest sentence to which defendant would be subjected was 202 months, and also stating that LEM was not mentioned as a part of his sentence. Our review of the record has turned up no indication that LEM was addressed by either party, or the trial court, throughout defendant's trial. Accordingly, defense counsel's performance may have been deficient if he failed to inform defendant that MCL 750.520b(2)(d) and MCL 750.520n mandated LEM as a part of his sentence,

even though some unpublished opinions had held otherwise when the CSC victim was over 13 years old.

However, we nonetheless conclude that defendant has not demonstrated that he was prejudiced. In *Lafler*, 566 US at 164, the Supreme Court delineated the following analysis to determine whether deficient performance in rejecting a plea deal resulted in prejudice:

> [A] defendant must show that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (*i.e.,* that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed.

Here, defendant's sentence far exceeded the prosecution's rejected offer, which the trial court appeared to have been disposed to accept. However, the record does not suggest that defendant would have accepted the plea bargain if his trial counsel had alerted him to the possibility of LEM, or that the guidelines range might exceed 202 months. Further, we find it difficult to conceive how knowledge of LEM would have influenced a plea decision because it should have been imposed regardless of defendant's decision.

With regard to the possibility of a minimum sentence beyond 202 months, the record reveals that the prosecution and the trial court twice informed defendant that the guidelines range exceeded 202 months, and defendant chose to reject the plea offer involving a sentence lower in the guidelines range both times after hearing of the higher guidelines range. In fact, the record contains no statement that the upper limit of the guidelines range was less than 270 months. Defendant's actions indicated that he was determined to go to trial, given that he shed his first attorney, after rejecting a plea offer, knowing that the upper limit of the guidelines was 270 months. Then, defendant had successor counsel reject a plea offer after the trial court informed him that the upper limit of the guidelines was 300 months. The record does not suggest that defendant's rejection of the deal was influenced by mistaken advice, because he emphatically rejected offers to plead guilty, even with knowledge that the upper guidelines range was as high as 300 months. Therefore, the record does not present a reasonable probability that defendant would have accepted any plea offer actually extended if he had knowledge of LEM, or had more information about the upper limit of the guidelines range. Accordingly, defendant was not prejudiced even if his counsel provided deficient performance in plea negotiations.

## V. MISCALCULATION

Defendant's final argument is that the trial court miscalculated his total offense-variable (OV) score when scoring the sentencing guidelines. This Court reviews the trial court's factual determinations at sentencing for clear error. See *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). "A defendant is entitled to be sentenced by a trial court on the basis of accurate information." *People v Francisco*, 474 Mich 82, 88; 711 NW2d 44 (2006). A trial court relies on

inaccurate information when it sentences a defendant by consulting an inaccurate advisory guidelines range. *Id*. at 89 n 7.

According to defendant, the trial court's statement at his 2011 sentencing that his total OV score was 40, was erroneous because with OV 8 and 10 each at 15 points, the total number of points was 30, and the latter total would have resulted in a reduced guidelines range. However, according to a "preliminary sentencing guideline report," OV 4, serious psychological injury to a victim, was assessed at 10 points, which, adding the 15 points mentioned at sentencing for each of OV 8 and OV 10, would account for the total OV score of 40. OV 4 was not discussed at sentencing, presumably because it was not in dispute. For these reasons, defendant has not brought to light any error in calculating the total OV score at the original sentencing. Regardless, defendant has subsequently been resentenced, at his request, with reference to guidelines calculations defendant does not challenge, thus curing any alleged error in the original proceedings.

Affirmed.

/s/ Christopher M. Murray
/s/ Kirsten Frank Kelly
/s/ David H. Sawyer