## BIALY *v.* BIALY.

**1. DIVORCE—ALIMONY—PERMANENT ALLOWANCE TO WIFE.**

The court in chancery in this State has no inherent, common-law power to decree permanent alimony; its authority is purely statutory and is conferred by 3 Comp. Laws, § 8638 *et seq.*, as amended.

**2. SAME.**

Alimony, by whatever authority it is conferred, is an incident of marriage, and is based on the underlying principle that it is the duty of the husband to support his wife.

**3. SAME—AMOUNT—HUSBAND AND WIFE.**

In determining the amount of such alimony in gross, the judicial discretion is to be exercised according to this principle of maintenance and support, upon an equitable view of all the circumstances, considering the past relations and conduct of the parties, the health and age of each, whether or not either is responsible for the support of others, the amount and source of the husband's property, their station in life and manner of living, and what sum will leave the wife in an equal financial condition to that which she would have possessed if the husband's conduct had been correct and the marriage remained undissolved.

**4. SAME.**

While some authorities suggest that a third of the husband's estate or income would be regarded as an equitable proportion, and others indicate one-half, no definite rule of law can be predicated upon such theories or suggestions, but each case must be determined on its own basis.

**5. SAME—DESCENT AND DISTRIBUTION—DISTINCTIONS.**

Out of an estate belonging to complainant's husband of about $350,000, an award of $100,000 to the wife as permanent alimony was not excessive; nor was the wife entitled to more, on the theory that she should receive as large a proportion as she would have received after the death of her husband out of his estate.

Appeal from Bay; Collins, J. Submitted November 7, 1911. (Docket No. 55.) Decided December 8, 1911.

Bill by Carrie A. Bialy against Robert C. Bialy for divorce. From a decree for complainant, both parties appeal. Affirmed.

*Stoddard & McMillan,* for complainant.

*Curtis E. Pierce* and *Luther G. Beckwith,* for defendant.

STEERE, J. On the hearing of this suit in the trial court a decree of absolute divorce was granted complainant with an allowance of $100,000 permanent alimony, consisting of real estate valued at $2,250 and $97,750 in money. From this allowance both parties appeal; complainant contending it is insufficient, and defendant that it is excessive.

The grounds for divorce alleged in complainant's bill, which was filed August 20, 1909, are desertion, extreme cruelty, and adultery. Defendant's answer consists of a concise and categorical denial, in legal form, of complainant's charges. After issue was joined many and lengthy intermediary proceedings were had, and voluminous testimony was taken, before the commissioner, by deposition and in open court; the printed record consisting of 836 pages. In May, 1910, the case was heard on depositions and testimony taken in open court. Decree was filed January 24, 1911. The testimony discloses that both parties now desire a divorce. In the inception of their troubles defendant had importuned complainant orally and in writing to consent to a legal separation, suggesting that she institute the proceedings. She was opposed to a separation and refused at that time either to get a divorce herself or allow him to do so; but finally, two years later, as a result of his conduct towards her, she filed this bill on her own initiative. No collusion is claimed. Her charge of adultery and claim for heavy alimony do not seem to have been acceptable to defendant. The grounds on which a divorce was granted are not stated in the final decree; but, in his opinion, filed in the case, the

court states them as "desertion and cruel treatment," and determines it unnecessary to pass upon the other charge in the bill. That charge was and is energetically urged by complainant's solicitor chiefly for its bearing on the question of alimony, around which the serious work of this litigation centers, and which is the only issue raised in the appeals taken by the respective parties.

At the time of the trial complainant was 52 years of age and defendant 56. The couple have never had children, and it is not shown that either has any one dependent upon him or her. They have resided in Bay City, Mich., most of their lives. They were married in March, 1877. He was then just getting his start in life, having accumulated by his own efforts a house and lot and other assets collectively worth in the neighborhood of $1,400. He was then clerking in a hardware store in which he had a small working interest, receiving $9 per week and 10 per cent. of the profits of the business, making his income about $20 per week. She was married from her mother's home and had no property in her own right at that time. Her mother died in 1879, leaving complainant a house and two lots, and she also received about $600 as the proceeds of a will contest in which she was interested. The $600 was invested in a mortgage in her name. In 1881 defendant bought an increased interest in the hardware business, and to raise money for that purpose they together mortgaged the real estate which each owned for the sum of $1,300. They were then living in harmony, working together, and he had general charge of the property of both. While the details are not altogether clear, it appears quite satisfactorily that she had property which had come to her by inheritance approximating in value $2,800, and that some of it went into his business and some of it into a home for them. At the time this case was tried she owned in her own right property estimated as worth about $3,800. During his life defendant has, by thrift, industry, business ability, and judicious invest-

167 MICH.—36.

ments, accumulated a fortune of approximately $350,000, consisting of an extensive hardware business, real estate, stocks, bonds, and other assets.

These parties lived together as husband and wife in their home in Bay City from 1877, when they were married, until 1904, when defendant went to Chicago to take charge of a business there in which he had become interested. Thereafter they were separated at intervals until 1907, when all relations as husband and wife ceased. In the early days of their married life, while he was struggling for advancement in the business world, they seem to have lived happily together, with mutual confidence. He devoted himself assiduously to his business, while she cared for their home. She was a thrifty housewife and managed her domestic affairs economically, doing for many years all her own housework. The tastes and habits of both were simple, prudent, and frugal. After a time, as they became more prosperous, they procured a better home, worth in the neighborhood of $5,000, which they furnished appropriately and moved into. After that time she had help in the house and a horse and buggy for her use; but they continued to live modestly and economically, spending little for pleasures or display. During the time they lived together their annual expenses for both, including clothing and travel, would probably not at any time exceed $2,000, and much of the time, especially in the earlier years, would be less than $1,500. After they ceased to live together, defendant supplied complainant with means approximating $100 per month. Serious differences manifested themselves between the parties about the time defendant became interested in business in Chicago in 1904, where he went and resided for a time. Complainant contemplated joining him and establishing a home there; but he objected, and insisted on their living apart, as they did much of the time until August, 1907, when he finally refused to live with her as his wife at all. He had been growing tired of his wife, and was desirous of being freed from her. He began soliciting her for a

separation, and endeavored to persuade her to get a divorce from him. Writing to her from Chicago on January 8, 1905, he says:

"I have been thinking how little attention you get from me and how cold I am to you. * * * We do not go anywhere, and all I care for is work. * * * So I have thought that we would be separated, either annul the marriage, or divorce. * * *"

In another letter he wrote:

"After this I would never feel like living together again, and at the same time it is no fault of yours or anything lacking on your part. * * * I have lost my love and admiration that was once there. * * * I do not want you to come here and live with me. * * *"

The complainant was opposed to any separation, and solicitous of a reconciliation at that time. Failing in his efforts to persuade her to take the initiative, defendant began divorce proceedings himself in Cook county, Ill., in 1907; but they were not successful. Much of the voluminous testimony is devoted to the causes which brought about this estrangement. It is not necessary to rehearse them here; but one need not read between the lines to discover that defendant had transferred that "feeling of love and admiration that was once there" to other affinities. The facts proven in that connection are very difficult to reconcile with the theory of innocence on his part. That complainant is entitled to a divorce and substantial alimony is clearly shown.

A decree of absolute divorce has been granted separating the parties for life. Defendant has a fortune accumulated during their married life. Complainant has in her own name money and property amounting to between $3,000 and $4,000. She is not shown to be at fault, and is entitled to alimony proportionate to her circumstances and the fortune of her husband. The serious question before us is: What is just and equitable between the parties, in the light of the testimony, under the rules of law applicable to permanent alimony?

In behalf of complainant it is urged that in a case of this kind, where the wife is blameless and the divorce absolute, there should be either a final division of the estate, treating the same as though the marriage had been dissolved by death, allowing her the rights of a widow as in case of probation of said estate, which in this case would be one-half, or that, having not alone by labor and economy but by contributions from her independent estate materially aided in the accumulation of her husband's fortune, she should be treated as a partner, equitably entitled to a half of the result of their joint labors on dissolution of that partnership.

In behalf of the defendant it is contended that the amount allowed is excessive and in violation of the elementary principles of alimony which grow out of the obligation to support, arising from the relation of husband and wife; that, though alimony may be allowed in a gross sum and permanent, it should, nevertheless, be limited to the wife's maintenance for life, corresponding in degree to the support given her while living with her husband, to their social standing and position, general manner of living, taking into consideration also his circumstances and pecuniary ability. It is pointed out that at 53 years of age complainant's expectancy of life is 18 years, that a much less sum than the amount granted would not only meet all her possible necessities but furnish her during the remainder of her life with comforts and luxuries far in excess of those enjoyed at any time during coverture or before.

Our chancery courts have no inherent, common-law power to decree permanent alimony. *Perkins* v. *Perkins,* 16 Mich. 162. The authority is purely statutory, and is conferred by chapter 232, 3 Comp. Laws, supplemented by Act No. 259, Pub. Acts 1909; the latter simply being a requirement that all questions of dower shall be disposed of when divorce is granted and some provision in lieu thereof included in the decree.

The most important provision of the divorce law bear-

ing on the questions before us, and which gives the court its power to act, is section 8638, 3 Comp. Laws, which is as follows:

" Upon every divorce from the bond of matrimony for any cause except that of adultery committed by the wife, and also upon every divorce from bed and board for any cause, if the estate and effects awarded to the wife shall be insufficient for the suitable support and maintenance of herself and such children of the marriage as shall be committed to her care and custody, the court may further decree to her such part of the personal estate of the husband and such alimony out of his estate real and personal, to be paid to her in gross or otherwise as it shall deem just and reasonable, having regard to the ability of the husband and the character and situation of the parties, and all the other circumstances of the case."

In that connection section 8639 provides that, when the marriage shall be dissolved and a divorce decreed for various acts of misconduct on the part of the husband, the wife shall be entitled to dower in the lands in the same manner as if he were dead.

In the case at bar there are no children of the marriage committed to complainant's care and custody, and, so far as disclosed by the record, no one dependent on either of the parties. Within the scope of discretionary power given to the court, he was authorized and required to decree her such *alimony* as he deemed " just and reasonable, having regard to the ability of the husband and the character and situation of the parties and all other circumstances of the case." To disturb his decree we must find that he either acted in violation of the statute or some rule of construction applicable to it, or that in the exercise of the broad discretion conferred upon him he has failed to discern what under the law was just and reasonable.

While this is a statutory award, of permanent alimony in a gross sum, under a decree of absolute divorce ending the domestic relations and community of interests, the significance of such an award should not be lost sight of. Alimony, by whatever authority it is conferred, is an

incident of marriage, and based on the underlying principle that it is the duty of the husband to support his wife, not necessarily to endow her. Primarily it signifies, not a certain portion of his estate, but an allowance or allotment adjudged against him for her subsistence, according to his means and their condition in life during their separation, whether it be for life or for years. In practical application an award of permanent alimony in a gross sum may result in a division of the husband's estate; but the controlling element not to be lost sight of is his compulsory contribution for her support and maintenance under obligations of the marriage contract.

The judicial discretion afforded by the statute is to be exercised, according to this established principle of maintenance and support, upon an equitable view of all the circumstances of each particular case; but there is no absolute rule for limiting this discretion unless it be abused. The court should take into consideration the past relations and conduct of both parties, the health and age of each, whether or not either is responsible for the support of others, the amount and source of the husband's property, their station in life and manner of living, and especially, in view of all the testimony in the case, what sum will leave the financial condition of the wife during her life not inferior to what it would be if the husband's conduct had been correct and the marriage undissolved.

In an examination of the cases cited by counsel, and many others, bearing on the award of permanent alimony, while they are instructive and helpful, we fail to discover any specific case which can be taken as a perfect precedent for the one at bar. In the very nature of these proceedings, where such broad discretionary powers are conferred and exercised, we find the familiar saying that no two cases are alike particularly illustrated. Some authorities suggest that, while no two cases are exactly alike, a basis of one-third of the husband's income or estate might be regarded as a matter of course proportion to start with in considering permanent alimony, grading

upward and downward according to the circumstances of the particular case. English and American authorities are to be found indicating that view. In *Hamilton* v. *Hamilton*, 37 Mich. 603, Justice COOLEY, while deeming the award of one-half as excessive, speaks favorably of one-third as a proper allowance in that case. Such methods are, however, little more than suggestions and cannot be properly termed even a matter of course rule of law.

Authority also can be found tending to support complainant's claim that a moiety may be considered as a basis in some instances, on the theory of a life partnership; also that the divorce should be treated as though death had dissolved the marriage, and the estate may thereupon be divided accordingly.

A basis of one-half or even more might be just and equitable in a case where a large proportion of the property came from the wife, or her business ability and special efforts were largely instrumental in acquiring it. In this State, however, as a matter of law, business partnerships between husband and wife are not recognized, and on the facts in this particular case we think the trial court correct wherein he says:

" The financial history of the defendant is that, starting as a poor boy, he has, by practically his unaided efforts, from the exercise of his ability to make and save money, accumulated a large fortune.   *   *   *   I do not believe that the contribution to the capital of the two by the wife has been a material factor in the accumulation of this fortune.   Many who have larger contributions have decreased, rather than increased, their fortunes.   The result in this case is rather the effort of rare, born, educated, and exerted power to make and save money."

Neither can we adopt the proposed fiction that the husband is to be considered as dead by reason of the divorce, and distribution of his estate should be forthwith had. As a figure of speech it may be said that he is dead to her, but to adopt it as a legal fiction under which homicide by marriage and divorce is recognized and the estates of err-

ing husbands distributed to divorcees would be to offer a premium on progressive matrimony. Legal fictions, though handy, are dangerous tools. When it actually comes to administering the estate of her husband, a wife must wait until he is actually dead. The wronged wife can always secure separate maintenance and legal protection without absolute divorce.

While it may be computed, under the wife's expectancy of life, that a smaller sum would maintain her in comfort, as well supplied with all the comforts and luxuries as she has heretofore been, we cannot think that the award in this case is excessive. The delinquencies of the husband, and his financial circumstances, entitle her to an amount which will assure her beyond question generous and liberal support during her remaining years, according to her and his station in life. The learned circuit judge manifestly spent much time and thought upon this case. He saw and heard the witnesses, and familiarized himself with the testimony during the progress of a long trial. We think he attuned his discretion to proper rules, with a comprehensive and equitable view of all the questions involved. Our conclusion is that the award of alimony was reasonable and just under the circumstances and situation of the parties.

The decree is affirmed, without costs, except that each party will pay one-half the cost of printing the record.

OSTRANDER, C. J., and MOORE, BROOKE, and STONE, JJ., concurred.