The parties hereto were married on September 19, 1921, and lived happily together until 1936. They separated on February 17, 1938, and on February 24, 1938, plaintiff Bessie L. DeMay filed a bill of complaint in which she sought a decree of separate maintenance. Defendant Don DeMay filed an answer and cross bill. An order was entered by stipulation on March 22, 1938, under which defendant agreed to pay $45 per month as rent for plaintiff and, in addition, $37.50 per week as temporary alimony. The cause was dismissed for want of progress on September 15, 1941.
An order was entered on December 19, 1947, in conformity with another stipulation, reinstating the cause. Some months later defendant withdrew his cross bill and waived the right to participate in the hearing, except as to matters pertaining to the property of the parties and the amount of separate maintenance. A supplemental bill of complaint was then filed, which was amended to include a prayer for a *Page 74 
decree of absolute divorce. After taking considerable testimony the trial judge filed an Opinion and a decree was entered granting plaintiff a divorce. Defendant was required to pay arrearages of alimony amounting to $937.50, $50 per week as permanent alimony, an attorney fee of $1,000, and costs in the sum of $500.
In the property settlement it was ordered that the parties should become tenants in common of all real estate formerly held by them as tenants by the entireties. In addition to also becoming a tenant in common of a parcel owned solely by the defendant, plaintiff was permitted to retain all property which she had acquired and all moneys that had been previously paid her. Certain life insurance policies were also assigned to her.
At the time of the trial, which was 27 years after their marriage, plaintiff was 62 and the defendant was 64. Each had previously been married and each had one child by their previous marriages. When plaintiff married the defendant she was employed in his printing establishment and continued to work there for some years. The testimony, as stated by the trial judge, shows that the parties lived happily together until about 1936,
"when another woman came into the life of the defendant. * * * The plaintiff did everything possible to have the defendant forget the other woman and to live happily as they had in the past. The defendant kept promising that he would give up the other woman, but he never did. He furnished an apartment for her over his place of business, and she continued to live there up to the time of the hearing of the divorce. * * *
"The plaintiff had conscientiously endeavored to help make the married life a success, and there is no complaint made by the defendant that she did not do everything that a good and dutiful wife should do. They had a beautiful home in one of the better parts *Page 75 
of Jackson, which property was worth $17,000 at the time it was sold. The plaintiff had industriously saved her weekly wages so that at the time they built the home she had saved $10,000 to $12,000 which was put into the home. The home was beautifully furnished, having about $4,000 or $5,000 worth of furniture in the same. So the story of their life was one of success and happiness until the defendant took up with this other woman."
The questions involved, as stated by the defendant, generally have to do with his claim that the property, amount of alimony and attorney fee awarded his wife by the trial court were so excessive and exorbitant as to constitute an abuse of discretion. In support of this contention, instances of claimed error by the trial court are enumerated, including rulings on evidence. It is defendant's claim that at the time of the marriage he had a net worth of over $47,000, and that plaintiff had nothing, and at the time of his trial his net worth was about $81,000, notwithstanding the fact that in the meanwhile plaintiff had received upwards of $47,000 in cash and property, and hence, a further award to her of property valued at $21,000 was excessive.
The figures used in this analysis of the property settlement are subject to several interpretations. For example, there is included in these claimed amounts of property already received by plaintiff an item of $12,000, which plaintiff obtained out of the proceeds of the sale of the home of the parties. The undisputed testimony shows that at least $10,000 of the purchase price of this home came out of plaintiff's earnings; another item of $8,000 represents the estimated value of 1,000 shares of stock in defendant's company, which plaintiff received in 1928 or 1929 while the parties were still living happily together; another item of $4,825 was back salary allowed plaintiff as secretary and treasurer of *Page 76 
the company, on the advice of tax experts; the proceeds were used to reduce mortgages on entirety properties and for other joint expenditures. At the time of the trial it was shown that DeMay held 4,850 shares of stock in his company, which an investment consultant valued at over $11 a share. However, in computing his present net worth DeMay only places a value of $8 a share on his stock.
"The problem presented here is the same as that which was presented to the trial judge, which he characterized as follows:
"The question before the court is how should the property be equitably divided. There is no question but what these parties started out to make a happy married life, and each worked along that line until this other woman appeared. And it is quite apparent that they were going to try and keep it on an even basis.
"With this thought in mind the court will provide a property settlement and alimony allowance so that the plaintiff can live under the conditions that they had hoped would exist when they came to the later years of their married life."
While in a review de novo we are not restricted by the findings of the circuit court, we should carefully consider such findings and not reverse unless convinced that we would have reached a different conclusion. Johnson v. Johnson, 318 Mich. 21, and authorities therein cited.
The rule was laid down in Bialy v. Bialy, 167 Mich. 559 (Ann Cas 1913A 800), that the amount allowed should be determined in the light of the duty of a husband to support his wife, but not necessarily to provide her with a portion of his estate. It should be such an amount as will provide her "subsistence, according to his means and their condition in life during their separation, whether it be for life or for *Page 77 
years." As was said recently in Cooley v. Cooley, 320 Mich. 209
:
"The division of property in a suit for divorce is not governed by rigid rules. The Supreme Court does not substitute its judgment as to division of property for that of the trial judge in a suit for divorce in the absence of a clear showing of abuse of discretion."
We agree with the trial court that, in the light of the circumstances disclosed by this record, plaintiff should have a sufficient amount so that she can live under conditions which the parties had hoped would exist when they came to the later years of their married life. An examination of the record does not indicate that the trial court abused its discretion.
Plaintiff has cross-appealed, claiming that the amount of permanent alimony is inadequate, that the attorney fee allowed should be in greater amount, and the court should require the defendant to purchase from her the 1,000 shares of stock in defendant's company, which she holds and for which she should be paid $11,200. There being no merit in plaintiff's cross appeal, it must also fail.
The decree is affirmed, with costs to plaintiff.
SHARPE, C.J., and BOYLES, REID, NORTH, DETHMERS, BUTZEL, and CARR, JJ., concurred. *Page 78