# Court of Appeals, State of Michigan

## ORDER

Thaddeus J Andrusz v Jacqueline R Andrusz

Docket No.    331339

LC No.    2008-744224-DM

Michael J. Riordan
Presiding Judge

Amy Ronayne Krause

Brock A. Swartzle
Judges

The Court orders that the July 13, 2017 opinion is hereby AMENDED to correct a clerical error. The first sentence in the last paragraph is amended to read: "The trial court's order is reversed to the extent it includes the entirety of plaintiff's earned income beyond his taxable income in calculating his spousal support obligations." In all other respects, the July 13, 2017 opinion remains unchanged.

A true copy entered and certified by Jerome W. Zimmer Jr., Chief Clerk, on

JUL 18 2017
Date

Chief Clerk

THADDEUS J ANDRUSZ,

        Plaintiff-Appellant,

v

JACQUELINE R ANDRUSZ,

        Defendant-Appellee.

FOR PUBLICATION
July 13, 2017
9:00 a.m.

No.  331339
Oakland Circuit Court
LC No.  2008-744224-DM

Before:  RIORDAN, P.J., and RONAYNE KRAUSE and SWARTZLE, JJ.

RONAYNE KRAUSE, J.

Plaintiff appeals by leave granted the trial court's order clarifying the terms of the parties' consent judgment of divorce; which in relevant part ordered plaintiff to pay defendant a sum of money that the court concluded he had underpaid, ordered plaintiff to obtain a life insurance policy in favor of defendant, and declined to reduce the spousal support award.  On reconsideration, the trial court clarified that plaintiff may craft the life insurance policy to avoid making potentially posthumous payments to defendant.  We affirm in part, reverse in part, vacate in part, and remand for further proceedings.

The parties were married in 1984 and had two children, twins born in 1995.  The parties' relationship apparently broke down as a result of defendant's psychological illnesses, culminating in a hospitalization in 2008.  Plaintiff had been aware of her mental illnesses during the marriage, and it is undisputed that defendant has serious mental and physical health problems.  Defendant did not work at all after the children were born, and apparently has worked "very little" since the divorce.  The parties arrived at a consent judgment of divorce that was entered in 2009.  At issue in the instant proceedings is primarily the interpretation of certain of plaintiff's obligations thereunder.

In relevant part, the consent judgment provided as follows:

        3.      Defendant is awarded modifiable spousal support that shall terminate upon the death or remarriage of the Defendant.  Commencing January 1, 2009, Plaintiff shall pay $6,000 per month from Plaintiff's salary directly to Defendant on the first of each month based on Plaintiff's base income of $204,000 annually and Defendant having no income.  Additionally, in the event

Plaintiff's salary from employment is greater than $204,000 in a given year (January 1 through December 31), he shall pay 25% of said amount from employment-related bonus or commission via electronic fund transfer to Defendant as additional spousal support within 7 (seven) days of receiving same. This shall not include any NBC retention bonus Plaintiff may receive in 2009. Regarding any potential NBC retention bonus Plaintiff may receive, 33.3% of any gross amount of this retention bonus shall be paid to Defendant immediately as it is received by Plaintiff, as a one-time additional spousal support payment by Plaintiff to Defendant. All spousal support paid by plaintiff shall be taxable as income to Defendant and tax deductible from Plaintiff's income for purposes of income taxes in accordance with IRS regulations. Plaintiff shall secure his spousal support obligation with existing life insurance on Plaintiff's life or in a life insurance trust naming Defendant as an irrevocable beneficiary of said life insurance. Plaintiff shall provide proof of said security/insurance in compliance with this provision on a yearly basis to Defendant. A Uniform Spousal Support Order shall enter in accordance with this provision.

As the trial court recognized, the center of the instant controversy is the phrase "salary from employment."

The instant dispute began when defendant reviewed plaintiff's W-2 forms and concluded that plaintiff had "shortchanged" her because he consistently earned more than $204,000 but calculated the 25% he owed from the excess based on reported taxable income instead of "Medicare income,[1]" "thereby not accounting for his earned income that he deferred into his 401K [sic]." She also contended that he had not properly verified the existence of the required life insurance or trust securing his spousal support obligations. Plaintiff contended that defendant was misrepresenting or misunderstanding the terms of the consent judgment because his actual "salary from employment," as specified in the consent judgment, was considerably less than $204,000, and the language regarding excess payment pertained to his base salary rather than gross income.

At the time of the parties' divorce, plaintiff received a total income of "$565,000.00 and change," consisting of a base salary of $203,894 and the remainder from commissions. He was laid off shortly thereafter, and his substitute employment initially provided a base salary of $143,000 plus eligibility for commissions and bonus. By the time of the instant proceedings, defendant's base salary had increased to $187,455.84, with an additional car allowance, a company credit card for certain business expenses, and up to 30% beyond his base salary in possible commission bonuses and a "speculative" possible additional bonus. Plaintiff put some percentage of his compensation into a 401(k) account, but because of the fluctuation in his total

---

[1] In the lower court, defendant consistently made references to "Medicare income" with the apparent intent to refer to plaintiff's total earned income rather than his taxable income, although this terminology usage generated some confusion.

compensation, he did not know exactly how much. There has been no suggestion that plaintiff is not in good faith endeavoring to maximize his earning capacity.

It appears that defendant testified, but for unexplained reasons her testimony was not transcribed. Plaintiff does not dispute the trial court's summary that defendant "testified that she would like to work but currently has back and leg problems and is fearful of mental instability" and has approximately $6,100.00 in monthly expenses. The consent judgment did not require either parent to contribute to the support of their children after they reached the age of majority, but plaintiff nevertheless continued paying the entirety of the children's substantial college expenses and unspecified other expenses. Plaintiff testified that he had asked defendant to help, but she did not.

Plaintiff testified that he understood the consent judgment required him to pay defendant $6,000.00 a month if his salary was $204,000.00 a year, and that "salary" referred to his "base salary." He noted that he had paid the $6,000.00 even though his base salary had been below that amount every year other than in 2009, and he also voluntarily overpaid her an additional amount calculated on the basis of 25% of his entire compensation above $204,000.00 "because [he] wanted to address some of the issues with [defendant] and the kids." The trial court found, accurately insofar as we can determine, that plaintiff's total income had been reduced by more than half. Plaintiff asked the trial court to reduce his spousal support obligations accordingly and "uphold the original decree which states clearly that it is based on my salary," but sought no reimbursement.

The trial court concluded that "the plain language of the [judgment of divorce], and the intent and actions of the parties commands that the Plaintiff pay the Defendant 25% of any earned income over $204,000.00 as a result of his employment" and that that included "taxable and non-taxable income." The trial court did not deem plaintiff's car allowance or expense account to be "income," but it did conclude that between 2012 and 2014, the years for which tax information had been provided, plaintiff had underpaid defendant by a total of $15,591.67. Despite observing that plaintiff's total income had decreased by more than half and that plaintiff was solely paying for the parties' children's expenses, it declined to reduce plaintiff's spousal support obligation, noting in particular that plaintiff was not legally obligated to support the children. The trial court finally ordered plaintiff to maintain a life insurance policy in favor of defendant, the value of which plaintiff does not appeal.

As an initial matter, plaintiff inexplicably contends that the trial court's order requiring him to obtain a life insurance policy would effectively grant defendant a potential posthumous award. This issue was rendered moot in the trial court's order denying reconsideration. As noted, the trial court expressly clarified that because the consent judgment unambiguously terminated any of plaintiff's obligations in the event of defendant's death, plaintiff was free to craft the life insurance policy such that it would also terminate upon her death. The only way for defendant to receive a posthumous award would be if plaintiff crafts the life insurance policy to do so, which is now entirely optional, as defendant accurately concedes.

Primarily, plaintiff argues that the trial court inappropriately re-wrote the parties' consent judgment, a contract, by replacing the word "salary" with "income." We disagree, but we do

-3-

find that the trial court erred by including the entirety of plaintiff's earned income beyond his taxable income in calculating his spousal support obligations.

A trial court's award of spousal support is reviewed for an abuse of discretion, but any underlying factual findings are reviewed for clear error, and the award "must be affirmed unless [this Court is] firmly convinced that it was inequitable." *Gates v Gates*, 256 Mich App 420, 432-433; 664 NW2d 231 (2003). "In reviewing de novo equity cases, this Court may modify otherwise final judgments to rectify mistakes, clarify and interpret ambiguities, and alleviate inequities." *Hagen v Hagen*, 202 Mich App 254, 258; 508 NW2d 196 (1993). Consent judgments of divorce are contracts and treated as such. *In re Est of Lobaina*, 267 Mich App 415, 417-418; 705 NW2d 34 (2005). We review de novo as a question of law the proper interpretation of a contract, including a trial court's determination whether contract language is ambiguous. *Klapp v United Ins Group Agency, Inc*, 468 Mich 459, 463; 663 NW2d 447 (2003).

Defendant's position is that trial courts have the authority to modify judgments of divorce to reach equitable results. This is true to a certain extent and in certain contexts, but it is not applicable to this case. This Court has so held, but in the context of a divorce judgment entered by the court after a contested action, *not* in the context of tampering with the parties' consent judgment. *Hagen*, 202 Mich App at 256-258. Rather, a consent judgment can only be modified with the consent of the parties, at least in the absence of fraud, mistake, illegality, or unconscionability. *Blaske v Blaske*, 33 Mich App 201, 212; 189 NW2d 713 (1971); *Greaves v Greaves*, 148 Mich App 643, 646; 384 NW2d 830 (1986). The trial court may, however, fill voids in an incomplete consent judgment, and in so doing must balance the equities insofar as is possible under the circumstances. *Greaves*, 148 Mich App at 646-647. The consent judgment at issue in this matter is a contract and must be treated as such pursuant to ordinary principles of contract interpretation. *Lobaina*, 267 Mich App at 417-418.

Unambiguous contracts must simply be enforced as they are written, absent a handful of extremely unusual circumstances like fraud, duress, or illegality. However, if provisions of a contract irreconcilably conflict or can be reasonably understood as meaning different things, the contract is ambiguous as a matter of law and its proper meaning therefore becomes a question of fact. *Coates v Bastian Bros, Inc*, 276 Mich App 498, 503-504; 741 NW2d 539 (2007). The courts may in that event consider extrinsic evidence to resolve the ambiguity, but the overarching goal, to which any rule of interpretation must bow, is to determine the intent of the parties. *Shay v Aldrich*, 487 Mich 648, 660; 790 NW2d 629 (2010). The trial court's finding that the consent judgment was not ambiguous is incompatible with its reliance on extrinsic evidence. However, because we find that the consent judgment is, in fact, ambiguous, the trial court's reliance on extrinsic evidence was ultimately proper.

The second sentence of the relevant paragraph in the consent judgment appears to treat "salary" and "base income" as synonymous. The third sentence appears to treat "salary from employment" and "employment-related bonus or commission" as being at least related. If the phrase "salary from employment" was intended to refer exclusively to plaintiff's base salary, explicitly requiring the additional 25% to come from his "employment-related bonus or commission" is nonsensical. Plaintiff's "base income" ostensibly appears to be a reference to what he described as his "base salary." However, plaintiff is correct in stating that as a general matter, where words are undefined, a dictionary should be consulted, and not only do the various

words have distinct meanings, but different words are presumed to have distinct meanings in any event. See *Citizens Ins Co v Pro-Seal Service Group, Inc*, 477 Mich 75, 84; 730 NW2d 682 (2007); *Lickfeldt v Dep't of Corrections*, 247 Mich App 299, 306; 636 NW2d 272 (2001). Thus, the use of different words makes it unclear from the four corners of the contract whether the word "salary" in the third sentence of the paragraph is intended to be a reference to his "base salary" or his "income," and both understandings would be reasonable. On the facts of this case, the parties' consent judgment is therefore ambiguous as a matter of law.

Having so found, the trial court's consideration of the parties' conduct was a proper way of determining the parties' intent. The trial court accurately observed that, in practice, plaintiff had been consistently paying defendant 25% of everything he brought home over $204,000, strongly suggesting that the parties always intended "salary from employment" to refer to "income." Plaintiff contends that he voluntarily overpaid, and his so doing should not be held against him. "[W]hile generally a course of performance is highly persuasive evidence of proper contract interpretation when introduced against the party so performing, the law also recognizes that a party may undertake a wrong interpretation of the words of a contract and the other party should never be permitted to profit by such mistake in the absence of an estoppel arising from a prejudicial change of position in good-faith reliance on such performance." *Schroeder v Terra Energy, Ltd*, 223 Mich App 176, 191-192; 565 NW2d 887 (1997). The trial court did not explicitly express any views about the credibility of either party, but by inference it did not believe plaintiff's contention that he voluntarily overpaid. To the extent a factual determination turns on the credibility of a witness, this Court generally defers to the trial court. *McGonegal v McGonegal*, 46 Mich 66, 67; 8 NW 724 (1881). We have no reason not to do so here.

Therefore, we find that the trial court properly concluded that plaintiff was obligated by the parties' consent judgment to pay 25% of his income over $204,000 to defendant as his spousal support obligation. However, the trial court's determination that he was obligated to pay out of his earned income, rather than only his taxable income, is clearly erroneous. Such a finding conflicts with its reliance on course of performance, creates a potential double-dipping problem with computing spousal support upon plaintiff's presumed eventual retirement, would seem to discourage financial responsibility, and is inconsistent with balancing monies actually available to the parties. There is nothing in the record from which we could infer bad faith on plaintiff's part. The trial court's order lays out no analysis explaining how it arrived at the conclusion that the parties' actions and intentions reflected the inclusion of all earned income in addition to taxable income in computing his spousal support obligations. We therefore find that the trial court clearly erred in including all of plaintiff's earned income beyond his taxable income in calculating his spousal support obligations, and we reverse the trial court's order to that extent.

Plaintiff also contends that the trial court should have reduced his spousal support obligation in recognition of his significantly reduced income. We find that the trial court erred in failing to recognize that plaintiff's support of the parties' children was a fact that it could consider, and consequently we decline to resolve this issue specifically in either party's favor, but rather remand for reconsideration by the trial court.

Although the trial court correctly observed that plaintiff was under neither a legal nor a contractual obligation to support the parties' adult children's college expenses, the trial court

erroneously regarded that support as something it could not consider as an equitable concern. See *Elahham v Al-Jabban*, ___ Mich App ___, ___; ___ NW2d ___ (2017) (Docket No. 326775), slip op at pp 10-11. A trial court necessarily abuses its discretion if it fails to recognize that it has discretion to exercise and so does not exercise it. *Rieth v Keeler*, 230 Mich App 346, 348; 583 NW2d 552 (1998); *People v Merritt*, 396 Mich 67, 80; 238 NW2d 31 (1976). The trial court therefore committed an abuse of discretion by disregarding plaintiff's support of the parties' children as *per se* irrelevant.

The case defendant relies on to the contrary, *Lesko v Lesko*, 184 Mich App 395, 405; 457 NW2d 695 (1990), was decided prior to November 1, 1990, and is therefore not strictly binding pursuant to the "first-out rule," MCR 7.215(J)(1).[2] Furthermore, *Lesko* involved a situation in which the trial court's order effectively required the plaintiff to support the children through the defendant, contrary to the law prohibiting courts from ordering payment of child support for adult children. *Lesko*, 184 Mich App at 403-405. We think the *Lesko* Court disregarded its own citation to authority explicitly listing "whether either [party] is responsible for the support of others" as a factor to consider. "Responsibility for the support of others" appears to have originally been derived from *Bialy v Bialy*, 167 Mich 559, 566; 133 NW 496 (1911), which did not obviously distinguish between voluntarily-assumed responsibility and legally-obligated responsibility. *Lesko* is not binding on us, but we conclude that it was, in any event, wrongly decided. Whether a party—either party, in an appropriate case—has "responsibility for the support of others," irrespective of why, is a proper equitable consideration.

Defendant contends that so concluding raises the possibility that a party could somehow evade spousal support obligations altogether by choosing to support someone else instead. Such a concern is patently ridiculous: support of another is *an* equitable concern, not a dispositive

---

[2] The precedential nature of Court of Appeals opinions has a potentially confusing history. Published opinions of the Court of Appeals have always been binding on trial courts, but were not originally binding on other panels of the Court of Appeals except in "law of the case" scenarios or, obviously, on our Supreme Court. *CAF Investment Co v Saginaw Twp*, 410 Mich 428, 453-455; 302 NW2d 164 (1981); *Matter of Hague*, 412 Mich 532, 552-553; 315 NW2d 524 (1982); *Tebo v Havlik*, 418 Mich 350, 362-363, 379-381; 343 NW2d 181 (1984) (no majority opinion, but agreed to by a majority of the Justices); *Hackett v Ferndale City Clerk*, 1 Mich App 6, 11; 133 NW2d 221 (1965). In 1987, MCR 7.215(C)(2) was added to the Court Rules, but it was understood by the courts as only affecting whether an opinion of the Court of Appeals had any *immediate* effect while an appeal was pending before our Supreme Court, not whether any such opinion bound another panel of the Court of Appeals. See *Johnson v White*, 261 Mich App 332, 348-349; 682 NW2d 505 (2004). Thus, an opinion of the Court of Appeals was still regarded as only imposing binding precedent on trial courts. *People v Doyle*, 451 Mich 93, 111; 545 NW2d 627 (1996). It was not until the passage of the "first-out rule," now MCR 7.215(J)(1), that Court of Appeals opinions became binding on other Court of Appeals panels. See *Catalina Marketing Sales Corp v Dep't of Treasury*, 470 Mich 13, 23; 678 NW2d 619 (2004). Therefore, although *Lesko* might have been binding on the trial court in the absence of *Elahham*, it is not binding on us in any event, nor was the *Elahham* panel obligated to follow it.

one.  Furthermore, we fully expect trial courts to consider the extent to which such support is either legally or morally obligatory, the extent to which it might be naturally expected by long-standing ties of friendship or family, whether it is a sham or otherwise in bad faith, and any other appurtenant factor.  In any event, a court sitting in equity is expected to balance the equities:  the fact that it should consider one party's responsibilities does not exclude it from considering the other party's needs.[3]  And although we are not impressed by defendant's implied argument that she is impoverished despite receiving at least $72,000.00 a year and, as the trial court noted, having non-trivial cash reserves, there is no dispute that her expenses, presumably largely medical in nature, are quite substantial.  Balancing the equities necessarily involves declining to ignore any of them.

Furthermore, we decline to address whether the trial court should have reduced plaintiff's spousal support obligations, although we do find the trial court's stated reasoning insufficient.  Plaintiff accurately cites case law to the effect that a reduction in income *can* per se support a reduction in a spousal support obligation, and there may not be "an absolute duty to support the wife regardless of the circumstances of the husband." *Pohl v Pohl*, 13 Mich App 662, 665-666; 164 NW2d 768 (1968).  However, *Pohl* is no more binding on us than *Lesko*, and even at face value would merely *permit*, not mandate, a reduction in spousal support.  "The main objective of [spousal support] is to balance the incomes and needs of the parties in a way that would not impoverish either party." *Ackerman v Ackerman*, 197 Mich App 300, 302; 495 NW2d 173 (1992).  The trial court's largely unsupported conclusion, and defendant's contention, that a more-than-half reduction in total income was essentially a triviality defies sense in isolation.  However, because "*all* the circumstances of the case" must be considered, *McCallister v McCallister*, 205 Mich App 84, 87-88; 517 NW2d 268 (1994) (emphasis in original), plaintiff's equally unsupported contention that the trial court abused its discretion by failing to reduce his spousal support obligation *just* because his income had been reduced also fails.

Nothing in this opinion should be construed as any manner of dictation to the trial court as to how it should balance the parties' equities beyond the following:  the trial court's disregard of the substantial reduction in plaintiff's total income warrants some articulation of the trial court's reasoning, and the trial court abused its discretion by deeming plaintiff's support of the parties' children to be an impermissible or improper equitable consideration.  Furthermore, we note that plaintiff's income had increased every year since he changed his employment, so on remand, it would be proper for the trial court, should it and the parties so desire, to take new evidence and evaluate the situation as it presently stands.

---

[3] Additionally, we find it somewhat disingenuous that defendant urges us to consider equity to re-write the parties' contract, but urges us to focus narrowly on strict legal obligations in evaluating what is fundamentally an equitable matter.  Likewise, we find it very difficult to accept the implication that supporting *the parties' children* is somehow inappropriate.

The trial court's order is reversed to the extent it includes the entirety of plaintiff's earned income beyond his taxable income in calculating his child support obligations. The trial court's order is vacated to the extent it denied plaintiff's request to reduce his spousal support obligations. In all other respects, we affirm. This matter is remanded for further proceedings consistent with this opinion. No costs, neither party having prevailed in full.[4] MCR 7.217(A).

/s/ Amy Ronayne Krause
/s/ Michael J. Riordan
/s/ Brock A. Swartzle

---

[4] Defendant requests attorney fees from plaintiff, contending that she is unable to bear the expense of the appeal. In light of defendant's substantial income and our perception that her arguments on appeal are no more or less disingenuous or misplaced than plaintiff's, we decline.