*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

ROSEMARIE SCHEIBE,

        Plaintiff-Appellee,

v

PAUL SCHEIBE,

        Defendant-Appellant.

UNPUBLISHED
April 15, 2021

No. 349966
Dickinson Circuit Court Family
        Division
LC No. 18-019426-DO

Before: SHAPIRO, P.J., and CAVANAGH and REDFORD, JJ.

PER CURIAM.

Defendant appeals a judgment of divorce, challenging the trial court's property division and spousal support determinations. We affirm.

## I. BACKGROUND

The parties were married for 30 years and at the time of the divorce had three adult children, the eldest of whom was severely disabled and lived in a group home. Defendant was a commercial pilot throughout the marriage and typically flew to international destinations. Plaintiff was working as a flight attendant when she met defendant, but she became a stay-at-home mother for the majority of the marriage. At the time of the divorce, she was working full-time as an activity director at a nursing and rehabilitation facility.

Defendant testified that he had engaged in long-term infidelity since 2004 and had been in a relationship with another woman in Japan for the past six years. Defendant testified that the infidelity started when plaintiff placed their son in a group home without informing him. Plaintiff testified that she first learned about the infidelity in 2004, and asked defendant to go to marriage counseling. Despite the counseling, defendant continued his infidelity and stayed in the marriage to provide his two youngest children with a stable household. Plaintiff filed for divorce in 2018.

The parties acquired substantial assets during their marriage, including several investment accounts and parcels of property. The most disputed property was a Lake Mary resort, an eight-acre parcel with 420 feet of lake frontage, a house, five cabins, docks, a pavilion, and other

improvements. For over twenty years, plaintiff and defendant ran this property together while also residing there in the summer. Defendant received the Lake Mary property by stipulation, but the parties disputed the property's value and whether it was still income producing.

In determining the property division, the trial court found that several factors favored plaintiff. The court noted that plaintiff had limited earning capacity and was near the age of retirement, so she could not start a lucrative career. Comparatively, defendant had significant earning power and was eligible to seek a promotion to captain, which would increase his pay. The court noted that defendant would receive the Lake Mary resort property by stipulation and that it was capable of producing a limited income. The court also found that defendant was largely at fault for the dissolution of the marriage because of his infidelity. The court determined that a 55/45 split of the marital estate in favor of plaintiff was appropriate considering the relevant factors. The court calculated the total estate at $2,199,833, and awarded plaintiff assets totaling $1,025,623, leaving her short of 55% of the estate by $184,285. Defendant was ordered to pay the offset in cash within 18 months.

The trial court also found that an award of spousal support was appropriate considering the relevant factors. The court noted that although plaintiff was awarded substantial assets from the property division, 90% was held in retirement accounts rather than presently available funds. The court found that given plaintiff's limited income, her need to purchase a new home and significant attorney expenses, an award of $6,000 monthly spousal support was appropriate until defendant turned 65, when it would be reduced to $1,5000. The court amended the award to $5,000 per month after defendant explained in a motion for reconsideration that the judgment of divorce was subject to a change in the tax law that no longer allowed him to deduct the alimony payments from his taxes.

## II. ANALYSIS

## A. APPLICATION OF *DEMAY*

Defendant first argues that the trial court erred in its property division and spousal support determinations because it relied on the Michigan Supreme Court's decision in *DeMay v DeMay*, 326 Mich 72; 39 NW2d 248 (1949), which defendant contends is contrary to current law. We disagree.[1]

---

[1] We review de novo questions of law. *Cunningham v Cunningham*, 289 Mich App 195, 200; 795 NW2d 826 (2010). The trial court's factual findings are reviewed for clear error. *Id.* "A finding is clearly erroneous if we are left with a definite and firm conviction that a mistake has been made."

The trial court cited *DeMay*, 326 Mich 72, in its discussion of the factors to determine property division. Discussing the fifth *Sparks* factor,[2] the court stated:

> An established standard of living is a relevant consideration. The courts have held that it is appropriate to "provide a property settlement and alimony allowance so that the plaintiff can live under the conditions that they had hoped would exist when they came to the later years of their married life." *DeMay*[, 326 Mich 72]. Both parties will need to receive significant assets to maintain their stations in life. The Plaintiff, who has significantly less earning power, will need to be compensated accordingly to maintain her lifestyle.

In *DeMay*, the parties divorced following the defendant's infidelity, and the trial court noted that the plaintiff had continued working throughout the marriage and put her wages into the marital home. *Id.* at 74. The Supreme Court affirmed the property division and spousal support awarded by the trial court, agreeing with the lower court that, "in the light of the circumstances disclosed by this record, plaintiff should have a sufficient amount so that she can live under conditions which the parties had hoped would exist when they came to the later years of their married life." *Id.* at 77.

Defendant does not argue that the trial court erred by considering the parties' standard of living when dividing the marital estate. Instead, he argues that *DeMay* is inconsistent with current law because it allows a court to divide marital property on the basis of hopes that parties had for their future rather than the actual conditions that existed during the marriage. Defendant further argues that this reasoning led the trial court to erroneously conclude that plaintiff should be able to live in a home on the water rather than a home comparable to the marital property, which was not on the water.

First, there is no indication that *DeMay* has ever been overruled or superseded, and we are "bound to follow decisions by [the Michigan Supreme Court] except where those decisions have clearly been overruled or superseded . . . ." *Associated Builders & Contractors v Lansing*, 499 Mich 177, 191; 880 NW2d 765 (2016). Second, contrary to defendant's argument, *DeMay* does not allow a trial court to divide marital property on the basis of a party's unfounded hopes. *DeMay* was based on record evidence regarding the standard of living that the plaintiff was entitled to maintain. *DeMay*, 326 Mich at 77. Similarly, in this case, plaintiff's desire to live on lakefront property was not an unfounded wish. Rather, it was a defined plan that was supported by the record. Plaintiff testified that she and defendant had both planned to retire to the Lake Mary resort, which had waterfront property. In fact, the parties had lived there full-time during the summers. Therefore, plaintiff's intent to purchase waterfront property reflected her standard of living and established plan for retirement rather than a baseless wish.

---

[2] The fifth *Sparks* factor directs trial courts to consider the "life status of the parties" in determining an equitable division of the marital assets. *Sparks v Sparks*, 440 Mich 141, 159-160; 485 NW2d 893 (1992).

Defendant also argues that the trial court erred by applying *DeMay*'s analysis to its finding of fault because that case placed undue emphasis on fault. However, the record shows that the trial court did not invoke *DeMay* in its discussion of fault. And *DeMay* itself does not place particular emphasis on the fault of the parties, but discussed it as one element out of several considerations to determine property division and spousal support. Therefore, this argument is without merit.

Further, the record also shows that the trial court did not place undue emphasis on fault in this case. The court expressly acknowledged that fault was only one factor and should not be given undue emphasis. See *Cassidy v Cassidy*, 318 Mich App 463, 478; 889 NW2d 65 (2017). Although the trial court found that defendant was largely at fault for the dissolution of the parties' marriage because of his long-term infidelity, the court analyzed the parties' fault as one factor out of many that merited a 55/45 division of the property and an award of spousal support.

Defendant also argues that the record does not support a finding that his infidelity caused the breakdown of the marriage. We disagree. The fact that plaintiff continued in the marriage for years and tried to save the marriage through counseling does not contradict her testimony that she was deeply affected by defendant's affairs. Nor do her attempts to work through the couple's problems mean that she was indifferent to defendant's prolonged infidelity. In sum, the record supports the trial court's finding that defendant's long-term infidelity caused the breakdown of the marriage, and the trial court did not place undue emphasis on this factor.

## B. FINDINGS OF FACT

Defendant next argues that the trial court made erroneous findings regarding defendant's earning ability, possibility of promotion, and the income potential and value of the Lake Mary property.[3]

### 1. DEFENDANT'S INCOME

Defendant reported a gross income of $235,414.72 in 2015, $303,175.17 in 2016, and $325,199.07 in 2017. Defendant testified that these amounts were overstated because he had worked substantial overtime during those years and received annual profit-sharing bonuses of $15,000 to $25,000 per year. Defendant testified that without overtime, he worked approximately 75 hours per month and earned $16,000 monthly. Defendant acknowledged that he was eligible for a promotion to captain, but explained that he did not seek the position because he would have less control over his schedule and would be unable to spend weekends with his disabled son.

Defendant first argues that the that the trial court erred by adopting his 2017 gross income to reflect his earning ability because it was overstated in light of his overtime and large profit-

---

[3] The trial court's factual findings are reviewed for clear error. *Cunningham*, 289 Mich App at 200. "A finding is clearly erroneous if we are left with a definite and firm conviction that a mistake has been made." *Id.*

sharing bonus.[4]  Although defendant informed the trial court that his income was overstated because of his overtime and bonuses, he did not provide any evidence to show what his pay would be without them.  A trial court cannot base its decision on facts not in the record, nor can we.  MCR 7.210(A)(1).  Defendant merely testified that when he does not work overtime he works an average of 75 hours per month.  However, this does not establish how often he actually declines overtime and works that number of hours.  Defendant indicated a desire to work less overtime, but there was no indication that he had in fact done so or that he would do so in the future.  Similarly, there was no evidence that he would not continue to receive profit-sharing bonuses.  Defendant testified that most years the profit-sharing bonus averaged $15,000 to $25,000, and that the amount of the bonuses were the product of the collective-bargaining agreement, which was currently being negotiated.  However, there was no evidence that the next CBA would likely not provide for similar bonuses.  Given the absence of evidence supporting defendant's claims that his most recent annual income was not representative of what he will make in the future, the trial court's findings regarding defendant's income were not clearly erroneous.

However, we agree with defendant that the trial court erred by relying on his eligibility for a promotion in evaluating the property division and spousal support factors.  The trial court may consider a spouse's "unexercised ability to earn if income is voluntarily reduced to avoid paying alimony."  *Knowles v Knowles*, 185 Mich App 497, 498; 462 NW2d 777 (1990), citing *Healy v Healy*, 175 Mich App 187; 437 NW2d 355 (1989).  However, defendant did not reduce his income in response to the divorce proceedings and there is no indication that the pending divorce influenced his decision to not pursue a promotion to captain.  Rather, he explained that, if promoted to captain, he would lose his seniority which in turn would affect his ability to control his schedule.  That was particularly important to defendant because he prioritizes having his weekends free to spend with the parties' disabled son.  While a trial court should protect a dependent spouse from the other spouse's intentional reduction of income, "[a] trial court should not unduly interfere with the personal lives and career choices of individuals . . . ."  *Healy*, 175 Mich App at 191.  Because there is no indication that defendant declined to pursuit a captaincy as a result of the divorce proceedings, the court's consideration of defendant's possible promotion to captain was improper.

We note, however, that the trial court did not actually impute income to defendant.  Instead, the court mentioned the possible promotion in evaluating the parties' earning ability.   And in discussing the relative salaries, the trial court was merely making the point that defendant had substantially more earning potential than plaintiff.  That remains true even if one does not consider the possible promotion to captain.  Therefore, we see no grounds to reverse either the property division or spousal support determinations on this basis.  See MCR 2.613(A) (indicating that harmless error does not require reversal).  See also *Loutts v Loutts*, 298 Mich App 21, 35; 826 NW2d 152 (2012) ("We will not reverse a trial court's dispositional ruling unless we are left with a firm conviction that the property division was inequitable.").

---

[4] While the court noted defendant's income for 2015 through 2017, in evaluating the factors, the court referred exclusively to defendant's 2017 gross income as his earning ability.

## 2. LAKE MARY PROPERTY

Defendant next argues that the trial court erred by finding that the Lake Mary property was income producing.

The record supports the conclusion that the Lake Mary property was income producing during the marriage. Defendant argues that the Lake Mary resort was never profitable; however, plaintiff disagreed with that statement during her testimony. The parties agreed that some of the cabins were in deteriorated condition and that only two had been rented out in recent years. Plaintiff testified that they had rented out cabins every one of the 21 years they spent running the resort. Plaintiff testified that they were "booked completely full" every year, including 2018, and that the parties canceled the reservations only because of the impending divorce.

However, defendant specifically takes issue with the trial court's statements indicating that he could continue to earn income from the property moving forward. In determining the property division, the court stated, "Because the Defendant will be receiving the Lake Mary property, which is capable of producing income, the Plaintiff will need to be compensated accordingly." The court also noted that the resort property is capable of generating income when evaluating the spousal support factors. But the testimony was clear that the parties had worked together the run the resort, with plaintiff handling reservations and customer service. Plaintiff agreed that it was not feasible for either her or defendant to run the resort by themselves, and she does not dispute defendant's testimony that he would no longer rent out the cabins on the property. Given that there is no evidence that defendant would run the property as a resort, we agree that it was improper for the trial court to rely on Lake Mary's income producing potential in evaluating the property division and spousal support factors.

However, we conclude that court's consideration of this factor does not warrant reversal. As will be discussed, the court relied on multiple factors in dividing the marital estate and determining the extent of the spousal support award, and we conclude that the property division and spousal support award did not constitute an abuse of discretion. We therefore see no grounds to conclude that the court's limited reference to the income producing potential of the Lake Mary property requires reversal, particularly when the court did not impute a particular amount of income to defendant from the property and it acknowledged defendant's testimony that he would no longer rent out he cabin. See MCR 2.613(A); *Loutts*, 298 Mich App at 35.

Defendant also contends that the trial court erred in its valuation of the Lake Mary property because it relied on plaintiff's appraiser, who appraised the property as a resort.

Before dividing the marital estate, "a trial court must first make specific findings regarding the value of the property being awarded in the judgment." *Olson v Olson*, 256 Mich App 619, 627; 671 NW2d 64 (2003). "[W]here a trial court's valuation of a marital asset is within the range established by the proofs, no clear error is present." *Jansen v Jansen*, 205 Mich App 169, 171; 517 NW2d 275 (1994).

Both parties called appraisers at the divorce hearing to testify about the value of the Lake Mary property. Defendant's appraiser, Melissa Goodchild, appraised Lake Mary as a mixed-use residential property and compared other properties—some with rental cabins and others purely

residential—within a 50-mile radius to value the property at $348,000. Plaintiff's expert, Thomas Williams, used comparable resorts in Michigan and Wisconsin to value the property at $405,000. The trial court noted that both appraisals had "merits and flaws to some degree," and averaged the amounts to value the property at $376,000. Defendant argues that the trial court erred by giving Williams's appraisal any weight because his appraisal was "fraught with error." However, a review of the record does not support this contention. Williams was not asked to look at the income records of the Lake Mary resort, and he made appropriate reductions in the valuation of the comparable properties to account for material differences. For example, he adjusted the value of a comparable resort in Ontonagon County by $100,000 because it had 14 cabins, rather than five. Overall, given the testimony, the trial court did not clearly err by finding that Williams's appraisal was somewhat reliable and averaging the value of the two appraisals.

## C. PROPERTY DIVISION

Defendant next argues that the trial court's property division was grossly excessive and impermissibly punitive because the equalization payment required him to raise substantial cash from his real estate and retirement account. We disagree.[5]

"The goal in distributing marital assets in a divorce proceeding is to reach an equitable distribution of property in light of all the circumstances. The trial court need not divide the marital estate into mathematically equal portions, but any significant departure from congruence must be clearly explained." *Berger v Berger*, 277 Mich App 700, 716-717; 747 NW2d 336 (2008) (citations omitted). To determine an equitable division of marital assets, courts consider the nine factors set forth in *Sparks v Sparks*, 440 Mich 141, 159-160; 485 NW2d 893 (1992):

> (1) [D]uration of the marriage, (2) contributions of the parties to the marital estate, (3) age of the parties, (4) health of the parties, (5) life status of the parties, (6) necessities and circumstances of the parties, (7) earning abilities of the parties, (8) past relations and conduct of the parties, and (9) general principles of equity.

A court may also consider relevant additional factors that vary depending on the facts and circumstances of the case. *Id.* at 160.

In considering the *Spark* factors, the trial court discerned several reasons why plaintiff should be awarded a 55/45 split of the marital property, including that (1) plaintiff was 57 years old and not in a position to start a lucrative career while defendant was 55 years old with significantly greater earning ability; (2) plaintiff needed to be compensated to maintain her lifestyle and expected standard of living for retirement per *DeMay*; and (3) defendant was largely at fault for the marriage. As noted, the trial court also considered defendant's receipt of the Lake Mary

---

[5] "This Court reviews a property distribution in a divorce case by first reviewing the trial court's factual findings for clear error, and then determining whether the dispositional ruling was fair and equitable in light of the facts." *Olson v Olson*, 256 Mich App 619, 622; 671 NW2d 64 (2003). "The dispositional ruling is discretionary and should be affirmed unless this Court is left with the firm conviction that the division was inequitable." *Draggoo v Draggoo*, 223 Mich App 415, 429-430; 566 NW2d 642 (1997).

property, which was capable of producing income, as an additional consideration favoring a higher award to plaintiff. While this was improper for the reasons stated, we conclude that a 55/45 division was equitable in light of the other reasons relied on by the trial court.

Defendant does not expressly argue that a 55/45 division was an abuse of discretion. However, he maintains that the equalization payment ordered by the court was inequitable. As noted, the total accounts and property allocated to plaintiff amounted to $1,025,623, leaving her short of 55% of the estate by $184,285. Accordingly, the court ordered defendant to make an equalization payment of $184,285 to plaintiff within 18 months.

Defendant argues that the equalization payment should have been limited to $50,000. However, if defendant were ordered to pay plaintiff only $50,000 in equalization, that would leave plaintiff with only 49% of the marital estate, which would be inconsistent with the trial court's findings that the majority of the *Sparks* factors favored plaintiff. Defendant also argues that he cannot afford to make the equalization payment because it would take his entire gross pay and leave him impoverished. His argument is unsupported by the record. The record shows that defendant has adequate income to cover the equalization payment and support himself. Even if he did not, nothing requires defendant to pay the equalization payment out of his work income. In this case, defendant had nearly $1.2 million in assets at his disposal. Defendant argues that it would be inequitable for the trial court to force him to invade his property or his other assets to make the equalization payment, but cites no authority that suggests that this is impermissible. Overall, defendant had ample assets to sell or mortgage that would enable him to afford the equalization payment, so the trial court's property division was not inequitable or punitive.

## D. SPOUSAL SUPPORT

Defendant lastly argues that the trial court abused its discretion by awarding excessive spousal support. We disagree.[6]

"The main objective of alimony is to balance the incomes and needs of the parties in a way that will not impoverish either party, and alimony is to be based on what is just and reasonable under the circumstances of the case." *Olson*, 256 Mich App at 631. To determine appropriate spousal support, the trial court should consider several factors, including:

> (1) [T]he past relations and conduct of the parties, (2) the length of the marriage, (3) the abilities of the parties to work, (4) the source and amount of property awarded to the parties, (5) the parties' ages, (6) the abilities of the parties to pay alimony, (7) the present situation of the parties, (8) the needs of the parties, (9) the parties' health, (10) the prior standard of living of the parties and whether either is responsible for the support of others, (11) contributions of the parties to the joint

---

[6] We review a spousal support award for an abuse of discretion. *Loutts v Loutts*, 298 Mich App 21, 25; 826 NW2d 152 (2012). "An abuse of discretion occurs when the trial court's decision falls outside the range of reasonable and principled outcomes." *Id.* at 26.

estate, (12) a party's fault in causing the divorce, (13) the effect of cohabitation on a party's financial status, and (14) general principles of equity. [*Id.*]

"The main objective of alimony is to balance the incomes and needs of the parties in a way that will not impoverish either party, and alimony is to be based on what is just and reasonable under the circumstances of the case." *Id.* An award of spousal support is appropriate where "only a small fraction of plaintiff's [property settlement] award is liquid or capable of income generation." *Id.* at 633.

Defendant first argues that the trial court did not determine the threshold issue of whether the award to either party was insufficient for suitable support and maintenance. See MCL 552.23(1) ("Upon entry of a judgment of divorce or separate maintenance, if the estate and effects awarded to either party are insufficient for the suitable support and maintenance of either party . . . , the court may also award to either party . . . spousal support . . . ."). Defendant argues that the plaintiff's substantial property division award is sufficient to meet her needs. However, a spouse is not required to liquidate property awarded to meet daily needs when spousal support can be made available. *Gates v Gates*, 256 Mich App 420, 437; 664 NW2d 231 (2003). In this case, the trial court noted that while plaintiff had been awarded property totaling over a million dollars, a significant portion of the award was in the form of retirement income with only approximately 10% being awarded in liquid assets. The court further found that plaintiff had a limited annual income of approximately $18,000 from her job and did not have the capacity to start a higher-earning career, and so did not have sufficient means to support her standard of living. The court also considered the factors outlined above and found that eight of them weighed in favor of an award of spousal support for plaintiff. Accordingly, the trial court did not abuse its discretion by awarding plaintiff spousal support.

Defendant also argues that the amount of support awarded by the court was excessive given's plaintiff's needs. The court noted that plaintiff submitted a monthly budget of $1,925.00, but that included her then-monthly rent of $400. The court reasoned that plaintiff's monthly expenses would increase significantly once she purchased a home and was responsible for mortgage payments, taxes, and utilities. Given plaintiff's limited income, the court concluded she would need additional assistance. Even assuming that plaintiff's new budget would not rise to $5,000 a month, the court considered a variety of factors in determining the extent of support, such as the length of the marriage, defendant's substantially larger income, the parties' ages, plaintiff's prior standard of living, and defendant's fault in causing the divorce. These were all proper considerations in determining the amount of the award.[7]

Defendant maintains that $5,000 in spousal support until he reaches the age of 65 will leave him impoverished. As previously discussed, we disagree with defendant that the trial court clearly erred by relying on his 2017 gross income of $325,000 as representative of his earning ability. Accepting defendant's assertion that he is subject to a 30% tax rate, he would be left with sufficient post-tax income to pay spousal support and his estimated monthly expenses of $2,792. Defendant also argues that he will be unable to pay the equalization payment and $5,000 in monthly support without liquidating assets. However, even assuming that is true, we again note that defendant does

---

[7] The spousal support order remains modifiable should circumstances change. MCL 552.28

not identify any caselaw that precludes a party from having to sell property to satisfy an equalization payment.

Defendant lastly argues that the trial court erred by failing to fully consider the effects of changes in the federal tax code. However, the trial court addressed this argument in deciding defendant's motion for reconsideration and decreased the monthly spousal support award from $6,000 to $5,000 in light of the tax code amendments. Accordingly, the court's final support award took into account the changes to the tax code.

In sum, considering the length of the marriage, defendant's fault in causing the divorce, the substantial discrepancy in the parties' earning abilities, and plaintiff's needs, we conclude that an award of spousal support of $5,000 per month until defendant reaches 65, at which time it will be reduced to $1,500 per month, was not an abuse of discretion.

Affirmed.

/s/ Douglas B. Shapiro
/s/ Mark J. Cavanagh
/s/ James Robert Redford